# Exhibit A



# COMMONWEALTH of VIRGINIA

POST OFFICE BOX 2452

### *Secretary of the Commonwealth*

RICHMOND, VIRGINIA 23218-2452

## NOTICE OF SERVICE OF PROCESS

National Products, Inc.
8410 Dallas Avenue, S.
Seattle, WA 98106

5/3/2017

Yakattack, LLC

vs.

National Products, Inc.

**Summons and Complaint**

Dear Sir/Madam:

You are being served with the enclosed notice under section 8.01-329 of the Code of Virginia which designates the Secretary of the Commonwealth as statutory agent for Service of Process.

If you have any questions about the matter, PLEASE contact the CLERK of the enclosed/below mentioned court or any attorney of your choice. Our office does not accept payments on behalf of debts. The Secretary of the Commonwealth's ONLY responsibility is to mail the enclosed papers to you.

COURT:

Nottoway County Circuit Court
328 West Courthouse Rd
Nottoway, VA 23955

Service of Process Clerk
Secretary of the Commonwealth's
Office

**AFFIDAVIT FOR SERVICE OF PROCESS ON THE SECRETARY OF THE COMMONWEALTH**

Case No. CL1700005600

Commonwealth of Virginia    VA. CODE §§ 8.01-301, -310, -329; 55-218.1; 57-51

Nottoway County ........................................................................................ Circuit Court

Yakattack, LLC.                                        v.    National Products, Inc.
609 2nd St., NW.                                             8410 Dallas Avenue, S.
Burkeville, VA 23922                                         Seattle, WA 98106

TO THE PERSON PREPARING THIS AFFIDAVIT: You must comply with the appropriate requirements listed on the back of this form.

| Attachments: | [✓] Summons and Complaint | [ ] Notice |
| | | [ ] |

I, the undersigned Affiant, state under oath that
[ X ] the above-named defendant    [ ] ..............................................
whose last known address is    [X] same as above [ ] .........................................
1.   [X] is a non-resident of the Commonwealth of Virginia or a foreign corporation and Virginia Code § 8.01-328.1(A) applies (see NON-RESIDENCE GROUNDS REQUIREMENT on page 2).
2.   [ ] is a person whom the party seeking service, after exercising due diligence, has been unable to locate (see DUE DILIGENCE REQUIREMENT ON BACK)

............................................................... is the hearing date and time on the attached process or notice (if applicable)

4-27-17
DATE                    John M. Boswell
                        [ ] PARTY [X] PARTY'S ATTORNEY [ ] PARTY'S AGENT [ ] PARTY'S REGULAR AND BONAFIDE EMPLOYEE

State of Virginia    [ ] City [X] County of Nottoway
Acknowledged, subscribed and sworn to before me this day by John M. Boswell
                                                        PRINT NAME OF SIGNATORY

4-27-2017
DATE                    Carolyn P. Bowman
                        [ ] CLERK [ ] MAGISTRATE [X] NOTARY PUBLIC
                        Notary Registration No. 157461    My commission expires: 11/30/2020

[X] Verification by the clerk of court of the date of filing of the certificate of compliance is requested. A self-addressed stamped envelope was provided to the clerk at the time of filing this Affidavit.

NOTICE TO THE RECIPIENT from the Office of the Secretary of the Commonwealth of Virginia:
    You are being served with this notice and attached pleadings under Section 8.01-329 of the Code of Virginia which designates the Secretary of the Commonwealth as statutory agent for Service of Process. The Secretary of the Commonwealth's ONLY responsibility is to mail, by certified mail, return receipt requested, the enclosed papers to you. If you have any questions concerning these documents, you may wish to seek advice from a lawyer.
SERVICE OF PROCESS IS EFFECTIVE ON THE DATE WHEN SERVICE IS MADE ON THE SECRETARY OF THE COMMONWEALTH.

**CERTIFICATE OF COMPLIANCE**
I, the undersigned, Clerk in the Office of the Secretary of the Commonwealth, hereby certify the following:
1.   On MAY 0 1 2017 ..........................................., legal service in the above-styled case was made upon the Secretary of the Commonwealth, as statutory agent for persons to be served in accordance with Section 8.01-329 of the Code of Virginia, as amended.
2.   On MAY 0 3 2017 ..........................., papers described in the Affidavit and a copy of this Affidavit were forwarded by certified mail, return receipt requested, to the party designated to be served with process in the Affidavit.

                        SERVICE OF PROCESS CLERK, DESIGNATED
                        BY THE AUTHORITY OF THE SECRETARY OF THE COMMONWEALTH

FORM CC-1418 (MASTER, PAGE ONE OF TWO) 07/13

# COMMONWEALTH OF VIRGINIA



NOTTOWAY CIRCUIT COURT
Civil Division
328 W. COURTHOUSE ROAD P.O. BOX 25
NOTTOWAY  VA  23955
(434) 645-9043

Summons

To: NATIONAL PRODUCTS INC                          Case No. 135CL17000056-00
    8410 DALLAS AVENUE SOUTH
    SEATTLE WA 98108

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Friday, April 28, 2017

Clerk of Court: JANE L. BROWN

by _____
                (CLERK/DEPUTY CLERK)

Instructions:

Hearing Official:

Attorney's name:

*Receipt : 17000001809*

*Page 1 of 1*

COURT ADDRESS:
P.O. BOX 25
NOTTOWAY, VA 23955
PHONE # :434-645-9043

**OFFICIAL RECEIPT**
**NOTTOWAY CIRCUIT COURT**
**CIVIL**

**DATE :** 04/19/2017  **TIME :** 12:06:30
**RECEIPT # :** 17000001809  **TRANSACTION # :** 17041900010
**CASHIER :** LEL  **REGISTER # :** A283
**CASE COMMENTS :** YAKATTACK LLC v. NATIONAL PRODUCTS INC
**SUIT AMOUNT :** $50,000.00
**ACCOUNT OF :** YAKATTACK LLC
**PAID BY :** BOSWELL & WILLIAMSON PC
**CHECK :** $234.00  **CHECK NUMBER :** 6276
**DESCRIPTION 1 :** COM:COMPLAINT - CATCH-ALL
  2 : PLAINTIFF: YAKATTACK LLC
  3 : NO HEARING SCHEDULED

**CASE # :** 135CL1700005600

**FILING TYPE :** COM

**PAYMENT :** FULL PAYMENT

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 049 | WRIT TAX (CIVIL) | $15.00 |
| 123 | LEGAL AID SERVICES | $9.00 |
| 170 | COURT TECHNOLOGY FUND | $10.00 |
| 229 | COURTHOUSE MAINTENANCE FEE (CHMF) | $2.00 |

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 106 | (TTF) TECHNOLOGY TRUST FUND FEE (CIRCUIT COURT) | $5.00 |
| 147 | INDIGENT ASSISTANCE (INA) | $1.00 |
| 219 | LAW LIBRARY | $2.00 |
| 304 | CIVIL FILING FEE (LAW & EQUITY) | $190.00 |

**TENDERED : $** 234.00
**AMOUNT PAID : $** 234.00

**CLERK OF COURT :** *JANE L. BROWN*

PAYOR'S COPY

RECEIPT COPY 1 OF 3

**VIRGINIA:**

## IN THE CIRCUIT COURT OF NOTTOWAY COUNTY

**YAKATTACK, LLC,**

                Plaintiff,

    -vs-

**NATIONAL PRODUCTS, INC. D/B/A RAM
MOUNTS,**

                Defendant.

Civil Case No.

JURY TRIAL DEMANDED

### COMPLAINT

Plaintiff YakAttack, LLC, by its attorneys, Boswell & Williamson and Harris, Matthews & Crowder, P.C., as and for its Complaint against Defendant National Products, Inc. d/b/a RAM Mounts, hereby represents as follows:

### PARTIES

1.    Plaintiff YakAttack, LLC, ("Yak") is a limited liability corporation duly organized and conducting business under the laws of the State of Virginia, with a place of business at 609 2nd St NW, Burkeville, Virginia 23922.

2.    Upon information and belief, Defendant National Products, Inc. d/b/a RAM Mounts ("NPI") is a corporation duly organized and conducting business under the laws of the State of Washington, with a place of business at 8410 Dallas Avenue South, Seattle, Washington 98108, USA.

## JURISDICTION

3.      This court has jurisdiction pursuant to VA. Code Ann. §§ 8.01-620 (power of circuit courts to issue injunctive relief) and 8.01-184 (power of circuit courts to issue declaratory judgments).

4.      This Court has personal jurisdiction over Defendant under VA. Code Ann. § 8.01-328.1(1)-(4) because Defendant regularly transacts business in Nottoway County, contracts to supply things to Nottoway County, and caused tortious injury by its acts in Nottoway County.

## VENUE

5.      Venue is preferred before this Court under VA. Code Ann. § 8.01-261(15)(c). The acts at issue are occurring in Nottoway County. Venue is permissible before this Court under VA. Code Ann. § 8.01-262(3)-(4), (10). Plaintiff, evidence, and fact witnesses are located within Nottoway County. Defendants regular conduct substantial business activity within Nottoway County, and the cause of action underlying this Complaint arose within Nottoway County.

## BACKGROUND

6.      Yak was founded in 2009 and has quickly grown into a leader in the kayak fishing industry, specializing in kayak fishing gear and kayak rigging, including the manufacture and sale of paddle sports equipment.

7.      At all relevant times Yak did business in Nottoway County, Virginia.

8.      Following its formation, Yak – and its Principal and President, Luther Cifers – developed an innovative way to attach accessories to a kayak.

9.      One of Yak's developments was a tracking system that can be attached to the surface of a kayak, and allows for the attachment of Yak accessories.

- 2 -

10.     Upon information and belief, NPI is an original equipment manufacturer of mounting systems for electronic equipment for dozens of partners.

11.     Upon information and belief, NPI also sells and distributes its own branded products, including mounts for non-electronic equipment.

12.     Beginning in or about 2012, Yak entered into an arrangement with NPI to have NPI manufacture certain private label paddle sport products for Yak consistent with Yak's developed tracking system.

13.     One of the products that Yak contracted NPI to manufacture was Yak's "Screwball" invention.

14.     The "Screwball" has a rounded head with a hole drilled through the top, and a base that screws into the tracking system so that the product can slide along the tracks.

15.     Other Yak accessories can be attached to the head of the "Screwball" as shown below.

- 3 -



16.     Initially, Yak purchased the ball from NPI and modified it. Later, Yak created the hole in the rounded head, designing the size of the hole for the attachment of its accessories.

17.     Eventually, Yak contracted NPI to exclusively manufacture the Screwball for Yak and the paddle sports industry.

18.     Yak advertised, sold, and shipped the "Screwball" product under the "Screwball" name and the packaging for the product reflected that name as shown below.

- 4 -



19.     As a result, customers in the paddle sports market have come to associate the "Screwball" product with Yak.

20.     These customers have purchased the "Screwball" product under Yak's trade name.

21.     Although the parties never entered into a formal written agreement, electronic communications memorialized their business arrangement.

22.     For a time, the parties' relationship progressed without interruption or incident.

**NPI'S CONDUCT GIVING RISE TO THE CLAIMS HEREIN**

23.     On or about February 8, 2017, NPI notified Yak of its intention to expand its distribution of mounting for paddle sports and requested that the parties' business arrangement be reduced to a formal written contract.

24.     Yak agreed to engage in discussions over the terms of this written agreement, and has attempted to work with NPI to draft an agreement that is consistent with the parties' course of dealings and rights at law.

25.     However, NPI has improperly demanded that Yak must assign all its rights in the trade name "Screwball" to NPI.

13303744.4

26.     NPI has further improperly sought to assert intellectual property rights of its own, and rename Yak's trademarked product as "RAM® Track Ball."

27.     In fact, NPI is currently advertising "Track Ball" as one of its trademarked products.

28.     NPI has also represented that it has patents and/or pending patent applications associated with the "Screwball" product.

29.     Upon information and belief, NPI intends to market Yak's "Screwball" product under its "Track Ball" trade name, which will undoubtedly result in customer confusion.

30.     In addition to causing customer confusion in the paddle sports market, NPI's marketing of the Yak's "Screwball" product under its "Track Ball" trade name will dilute and impair Yak's goodwill and common law rights associated with the "Screwball" product.

31.     Upon information and belief and in an attempt to increase its bargaining position, NPI now refuses to ship orders that NPI already agreed to, in breach of its promise to fulfill those orders and the parties' long time business arrangement.

32.     Upon information and belief, NPI has solicited Yak's third-party customers, and offered to service their needs directly.

33.     Although Yak has a great relationship with its customers, Yak is now falling behind on its orders to big box stores due to NPI's conduct, endangering its business.

- 6 -

## COUNT I

## BREACH OF CONTRACT

34.     Plaintiff repeats and re-alleges each of the allegations set forth above as if set forth in full.

35.     Yak and NPI entered into a business agreement, (the "Agreement"), memorialized by e-mails and their course of conduct, whereby NPI would exclusively manufacture for Yak and the kayak/paddle sports industry.

36.     Pursuant to the Agreement, NPI acknowledged and understood that Yak's "Screwball" products belong to Yak.

37.     Pursuant to the Agreement, NPI agreed to fulfill Yak's orders according to agreed upon price terms.

38.     Yak recently placed orders with NPI.

39.     To date, NPI has failed, refused, and otherwise neglected to fulfill these orders and ship products to Yak.

40.     By reason of such failure, NPI is in breach of its obligations under the Agreement.

41.     As a result of the foregoing, Plaintiff is entitled to Judgment awarding damages in an amount to be determined at Trial, including consequential damages, plus accrued interest.

## COUNT II

## TORTIOUS INTERFERENCE WITH CONTRACT AND INTERFERENCE WITH BUSINESS EXPECTANCY

42.     Plaintiff repeats and re-alleges each of the allegations set forth above as if set forth in full.

43.     Yak has valid and enforceable contracts and/or longstanding and established business relationships with its third-party customers.

- 7 -

13303744.4

44.    NPI was aware of these valid and enforceable contracts and/or business relationships between Plaintiff and its third-party customers.

45.    NPI intentionally refused and continues to refuse to ship the products to Yak and upon information and belief, instead has unlawfully contacted and continues to contact Yak's customers directly in order to obtain their business without any participation of and/or payment to Yak.

46.    Yak has directed NPI to stop this practice and NPI has ignored these requests.

47.    As a result of NPI's improper methods, Yak has suffered and will continue to suffer substantial irreparable harm, including the actual loss and potential loss of business, customers, trade secrets, confidential and proprietary information, competitive advantage and goodwill.

48.    As a result of the foregoing, Plaintiff is entitled to an Injunction preventing Defendant from further solicitation of Plaintiff's customers as it relates to Yak's products.

49.    As a result of the foregoing, Plaintiff is entitled to Judgment awarding damages in an amount to be determined at Trial, plus accrued interest.

## COUNT III

### UNFAIR COMPETITION CONCERNING TRADE NAME UNDER VIRGINIA LAW

50.    Plaintiff repeats and re-alleges each of the allegations set forth above as if set forth in full.

51.    Yak's "Screwball" name associated with the "Screwball" product has acquired secondary meaning and significance in the paddle sports market that identifies Yak as the source of goods due to its continued packaging and sales of the product under the "Screwball" name.

- 8 -

52.     NPI now attempts to unfairly sell the same product under the "RAM® Track Ball" name.

53.     NPI's conduct will prejudice Yak's interest as the marketing of the "Screwball" product under the "Track Ball" trade name will dilute and impair Yak's established goodwill and common law rights associated with the "Screwball" product.

54.     As a result of the foregoing, Plaintiff is entitled to an Injunction preventing Defendant from further marketing and sale of the "Screwball" product under the "RAM® Track Ball" name.

55.     As a result of the foregoing, Plaintiff is entitled to Judgment awarding damages in an amount to be determined at Trial, plus accrued interest.

**COUNT IV**

**UNFAIR TRADING CONCERNING TRADE NAME UNDER VIRGINIA LAW**

56.     Plaintiff repeats and re-alleges each of the allegations set forth above as if set forth in full.

57.     Yak's "Screwball" name associated with the "Screwball" product has acquired secondary meaning and significance in the paddle sports market that identifies Yak as the source of goods due to the packaging and sale of the product under the "Screwball" name.

58.     NPI now attempts to unfairly sell the same product under the "RAM® Track Ball" name.

59.     NPI's conduct will deceive consumers in the paddle sports market place who have come to associate the "Screwball" product with Yak and the "Screwball" name, allowing NPI's product to be "palmed off" to buyers who mistake it for Yak's product, and allowing NPI to reap financial profits resulting from its deception.

- 9 -

60.     The same profits would be unfairly, and fraudulently, diverted from Yak.

61.     As a result of the foregoing, Plaintiff is entitled to an Injunction preventing Defendant from further marketing and sales of the "Screwball" product under the "RAM® Track Ball" name.

62.     As a result of the foregoing, Plaintiff is entitled to Judgment awarding damages in an amount to be determined at Trial, plus accrued interest.

**COUNT V**

**EQUITABLE ESTOPPEL**

63.     Plaintiff repeats and re-alleges each of the allegations set forth above as if set forth in full.

64.     For several years, NPI was aware that Yak marketed and sold the "Screwball" product under Yak's "Screwball" name without objection.

65.     Through that conduct, NPI waived any right to object to Yak's marketing and sale of the "Screwball" product under Yak's "Screwball" name, and induced Yak's good faith reasonable reliance on their continued dealings as established by their past conduct.

66.     Specifically, Yak relied on NPI to provide the subject goods to Yak as NPI had in their past dealings.

67.     NPI now attempts to unfairly sell the same product under the "RAM® Track Ball" name.

68.     As a result of the foregoing, Plaintiff is entitled to an Injunction preventing Defendant from further marketing and sales of the "Screwball" product under the "RAM® Track Ball" name.

13303744.4

69.     As a result of the foregoing, Plaintiff is entitled to Judgment awarding damages in an amount to be determined at Trial, plus accrued interest.

**WHEREFORE,** Plaintiff YakAttack, LLC, by its attorneys, respectfully requests judgment against Defendant:

A.     Imposing a permanent injunction preventing Defendant from soliciting Plaintiff's third-party customers and otherwise preserving the status quo between the parties;

B.     Imposing a permanent injunction preventing Defendant from further marking and sale of the "Screwball" product under any other trade name;

C.     Awarding specific performance of Yak's contracts and orders;

D.     Awarding damages in an amount to be determined at trial; and

E.     For such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

In accordance with Rule 3:21 of the Supreme Court of Virginia, Plaintiff hereby demands a trial by jury of all claims and issues so triable.

13303744.4

**DATED**:          April 18, 2017

**BOSWELL & WILLIAMSON**
**ATTORNEYS AT LAW**

By _____
      John M. Boswell
      Virginia Bar Roll No. 07415
*Attorneys for Plaintiff*
Office and Post Office Address
601 East Virginia Avenue
P.O. Box 45
Crewe, Virginia 23930
Telephone:  (434) 645-7338


**HARRIS, MATTHEWS & CROWDER, P.C.**

By: _____
      Calvin S. Spencer, Jr.
      Virginia Bar Roll No.
*Attorneys for Plaintiff*
Office and Post Office Address
111 E. Fifth Ave
P.O. Drawer G.
Kenbridge, Virginia 23944
Telephone:  (434) 676-2192


**BARCLAY DAMON, LLP**

By: _____
      Michael Oropallo
      *Pro Hac admission to be requested*
*Attorneys for Plaintiff*
Office and Post Office Address
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone:  (315) 425-2831


- 12 -



ZIP 23219 $ 006.98°
02 1W
0001402911 MAY 03 2017



**CERTIFIED MAIL®**

7016 2140 0000 5624 7771

**BOSWELL & WILLIAMSON**
601 East Virginia Avenue • P. O. Box 45
Crewe, Virginia 23930
(434) 645-7338

To:  National Business Products, Inc.
     8410 Dallas Avenue, S.
     Seattle, WA  98106

BOSWELL & WILLIAMSON
ATTORNEYS AT LAW
P. O. BOX 45
CREWE, VIRGINIA 23930

**VIRGINIA:**

## IN THE CIRCUIT COURT OF NOTTOWAY COUNTY

| | |
|---|---|
| YAKATTACK, LLC, | ) |
| Plaintiff, | ) |
| -vs- | ) |
| | ) Civil Case No. CL17-00005600 |
| NATIONAL PRODUCTS, INC. D/B/A RAM MOUNTS, | ) |
| Defendant. | ) |

## BILL FOR INJUNCTION

To the Honorable Judge of this aforesaid court:

Your Plaintiff YakAttack, LLC moves this Court for an Order of Injunction against the Defendant on the grounds as hereinafter set forth:

1.  Plaintiff YakAttack, LLC ("Yak") is a limited liability company organized and conducting business in Virginia, that specializing in fishing gear and kayak rigging, including the manufacture and sale of paddle sports equipment.

2.  Defendant National Products, Inc. d/b/a RAM Mounts ("NPI") is an original equipment manufacturer of mounting systems for electronic equipment for dozens of partners.

3.  Since 2012, NPI has fulfilled orders placed by Yak for manufacture of Yak's "screwball" product pursuant to an exclusive agreement and course of dealing between the parties.

13405695.1

4.      NPI now refuses to ship orders placed by Yak in an attempt to force Yak to refer to its Screwball product as NPI's own competing Trackball product, even though the products differ.

5.      The current refusal by NPI to abide by the terms of the parties' agreement and its promise to fulfill orders placed by YakAttack of its trademarked product, which NPI manufactures pursuant to an exclusive agreement, has subjected YakAttack to immediate and irreparable harm that cannot be cured at a later date by money damages.

6.      Following Yak's commencement of this suit, NPI subsequently filed a trademark infringement lawsuit in Washington Federal District Court.

7.      Yak has no adequate remedy at law to prevent NPI's refusal to ship its placed and acknowledged orders.

8.      There is assurance that an injury will occur if NPI continues to refuse the acknowledged orders.

9.      Yak will suffer irreparable injury as NPI's actions will also have the effect of eliminating Yak from the marketplace, giving NPI an opening to take Yak's hard earned business, because Yak's customers will no longer be able to purchase the Screwball product, and in the future will only have the option of purchasing NPI's "Track Ball" product.

10.     The granting of the requested injunction would prevent a multiplicity of lawsuits, in both state and federal court; would protect Yak's goodwill; would maintain the status quo; would cause no hardship or inconvenience to NPI; and without the same there would be a great detriment to the public in that third parties would not have their orders fulfilled and would be deceived or confused by the rebranding of the "Screwball" as "Track Ball"; and would prevent a future wrong.

- 2 -

13405695.1

**WHEREFORE,** your Plaintiff YakAttack, LLC, requests an order for an injunction of a temporary prohibitive nature (to later be merged into a permanent injunction) preventing the Defendant herein from refusing to fulfill the orders that it has already acknowledged; and/or staying the Washington lawsuit; and for whatever general relief this court deems proper and for an award of sanctions in the form of costs and attorney's fees against the Defendant herein for failing to perform their obligations under the parties course of dealing.

13405695.1

**DATED**:     May 9, 2017

BOSWELL & WILLIAMSON
ATTORNEYS AT LAW

By: _John M. Boswell_

John M. Boswell
Virginia Bar Roll No. 07415
*Attorneys for Plaintiff*
Office and Post Office Address
601 East Virginia Avenue
P.O. Box 45
Crewe, Virginia 23930
Telephone: (434) 645-7338

HARRIS, MATTHEWS & CROWDER, P.C.

By: _John M. Boswell per telephone author_

Calvin S. Spencer, Jr.
Virginia Bar Roll No. 41924
*Attorneys for Plaintiff*
Office and Post Office Address
111 E. Fifth Ave
P.O. Drawer G.
Kenbridge, Virginia 23944
Telephone: (434) 676-2192

BARCLAY DAMON, LLP

By: _John M. Boswell per telephone authority_

Michael Oropallo
*Temporary Pro Hac Admission*
*Attorneys for Plaintiff*
Office and Post Office Address
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone: (315) 425-2831

**VIRGINIA:**

## IN THE CIRCUIT COURT OF NOTTOWAY COUNTY

| | |
|---|---|
| YAKATTACK, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Civil Case No. CL17-00005600 |
| ) | |
| NATIONAL PRODUCTS, INC. D/B/A RAM ) | |
| MOUNTS, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

## BRIEF IN SUPPORT OF INJUNCTION

To the Honorable Judge of this aforesaid court:

## PRELIMINARY STATEMENT

Plaintiff YakAttack, LLC ("Plaintiff" or "Yak") submits this memorandum of law in support of its motion for a preliminary injunction preliminarily enjoining Defendant National Products, Inc., d/b/a RAM Mounts ("Defendant" or "NPI") from refusing to fulfill shipment orders placed by Yak pursuant to the parties' longstanding contractual relationship, and for a stay of further proceedings in the Western District of Washington.

Yak and its principal Luther Cifers have become known in the kayak or paddle sports industry as designing and supplying innovative, practical and quality products. About five years ago, Luther approached the CEO of NPI to have NPI mold and manufacture a Yak product known as the YakAttack Screwball™ ("Screwball"). The Screwball consisted of an off-the-shelf NPI Pin Lock Ball, but was modified by Yak in a unique way and was very popular with the

kayaking community. In 2012, NPI agreed to mold and manufacture the Screwball, and also agreed to give Yak exclusivity for the product in the paddle sports market.

Things proceeded well for both Yak and NPI in the subsequent five years. Yak would place orders on roughly a monthly basis, NPI would acknowledge and fill those orders in two to three weeks, and both parties profited well from Yak's growing business and their relationship. Unfortunately, NPI recently decided to unilaterally stop shipping even NPI-acknowledged orders, and has made unreasonable, if not unlawful, demands on Yak before it will ship existing and future orders.

At the heart of the dispute is NPI's insistence that Yak rebrand its Screwball – that was designed by Yak in 2010, *before* it started using NPI as its manufacturer – as a RAM Track Ball – a product owned by NPI. First, as noted above, the Screwball is a Yak design, and pre-dated NPI's development of the Track Ball. Second, the two products are different. Third, doing so would be deceptive to the consuming public that have come to know the Yak Screwball as a quality product. Fourth, NPI is seeking to strong-arm Yak into doing something that is wrong, by holding Yak's needed shipments over its head.

Yak simply is asking this Court to maintain the status quo. There is no dispute that a long time agreement has been in place, and the parties have performed and abided by it for years. At the very worst time of the year, knowing the orders Yak has committed to, and the revenues Yak will lose (if not its paddle sports business altogether), NPI has unilaterally refused to ship. Notably, Yak's loss would also allow NPI to swoop in as the "white knight" and fill those orders directly to Yak's customers with its Track Ball product.

For the reasons that follow, Yak respectfully asks the Court to issue an injunction preventing NPI from withholding Yak's acknowledged orders, and maintaining the status quo

unless or until NPI gives Yak reasonable notice of termination of the agreement, or this Court decides the case on the merits.  Yak also respectfully requests that this Court restrain NPI from proceeding in the later-filed Western District of Washington case.

## STATEMENT OF FACTS

The facts relevant to this application are set forth in Plaintiff's Complaint and in the Affidavit of Luther Cifers sworn to on May 9, 2017. Briefly stated:

The current refusal by NPI to abide by the terms of the parties' agreement and its promise to fulfill orders placed by Yak of its trademarked product, which NPI manufactures pursuant to an exclusive agreement, has subjected Yak to immediate and irreparable harm that cannot be cured at a later date by money damages.

Yak is a leader in the kayak fishing industry, specializing in kayak fishing gear and kayak rigging, including the manufacture and sale of paddle sports equipment.  At all relevant times Yak has done business in Nottoway County, Virginia.

Following its formation in 2009, Yak and its Principal and President, Luther Cifers, developed an innovative way to attach accessories to a kayak.  One of Yak's developments was a tracking system that can be attached to the surface of a kayak, which allows for the attachment of accessories.  Beginning in or about 2012, Yak entered into an exclusive arrangement with NPI to have NPI manufacture Yak's previously developed, popular and trademarked Screwball – a product that screws into the kayak tracking system and slides along the tracks, with the ability for other accessories to be affixed to the product's rounded head.  At that time, Yak provided NPI with drawings of its concept, and subsequently worked with NPI to create a mold for the product.

- 3 -

The parties agreed that NPI would manufacture and ship Yak's Screwball product either to Yak directly, or drop-ship it to Yak's customers, upon Yak's placement of an order and direction regarding place of shipment. Yak has faithfully paid NPI for all orders. Because the Screwball is a customized product that implements certain manufacturing know-how possessed by NPI, among other reasons, at this time, there is no other manufacturer from which Yak can, by reasonable diligence, have its product manufactured. It is for this reason that the parties entered into an exclusivity agreement.

However, in March 2017, after Yak placed a significant order with NPI, and after NPI acknowledged that order, NPI notified Yak that it would not fulfill the order unless Yak agreed to certain unreasonable if not unlawful demands. NPI, now a competitor of Yak which manufactures and sells its "Track Ball" product, a different product, into the same marketplace as Yak's "Screwball" product, has instead sought to condition any future business relationship on Yak abandoning its usage of the "Screwball" name in favor of NPI's "Track Ball" Name.

In essence, NPI is attempting to force Yak out of the marketplace by refusing to fulfill Yak's existing orders, which NPI knows are to be shipped to big box and OEM retailers, unless Yak agrees to rebrand its Screwball as a Track Ball — an act that would deceive the consuming public into believing the two products are the same (they are not). Yak will not agree to deceive its customers. As such, NPI is holding Yak's orders hostage and has caused real and irreparable harm to Yak, its business relationships, and its reputation.

NPI's actions will also have the effect of eliminating Yak from the marketplace, giving NPI an opening to take Yak's hard earned business, because Yak's customers will no longer be able to purchase the Screwball product, and in the future will only have the option of purchasing

- 4 -

NPI's Track Ball product.  In the absence of court intervention, NPI has indicated it will not fulfill the orders, which will result in irreparable harm to Yak.

Based on the aforementioned, and as set forth more fully below, Yak seeks a preliminary injunction directing NPI to fulfill Yak's pending orders, as required by the parties' agreement and Yak's acknowledgment, in order to prevent NPI from further damaging Yak's brand and goodwill.  Yak also respectfully requests that this Court restrain NPI from proceeding in the later-filed Western District of Washington case.

## LEGAL STANDARD

A circuit court has jurisdiction to award an injunction pursuant to Va. Code Ann. § 8.01-620.  No temporary injunction shall be awarded unless the court shall be satisfied of the plaintiff's equity which may be shown by affidavit or verified pleading. Va. Code Ann. § 8.01-628.

"Generally, to secure an injunction, a party must show irreparable harm and lack of an adequate remedy at law." *Hotjobs.com, Ltd. v. Digital City, Inc.*, 53 Va. Cir. 36, 39 (Cir. Ct. Fairfax Cnty. 2000) (citing *Wright v. Castles*, 232 Va. 218 (1986)).  In deciding whether to grant or deny a preliminary injunction, the following four factors should be considered in a balancing test: "(1) the likelihood of irreparable harm to the plaintiff if the injunction is denied; (2) the likelihood of irreparable harm to the defendant if the injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest." *Hotjobs.com, Ltd.*, 53 Va. Cir. at 39 (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353 (4th Cir. 1991)).

- 5 -

## ARGUMENT

### I.   PLAINTIFF IS ENTITLED TO THE INJUNCTIVE RELIEF REQUESTED HEREIN

#### A.   Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief

"[W]hen the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Op. Co.*, 22 F.3d 546, 552 (4th Cir. 1994) (holding that money damages are inadequate to compensate an aggrieved party for competitive injuries, such as loss of customers to a competitor).

As stated in the Cifers Affidavit, the orders that NPI is refusing to fulfill were placed by Yak to satisfy its commitments to certain big box customers and original equipment manufacturers ("OEMs"). If these orders are not fulfilled, Yak's customers will suffer their own financial harm, and will almost certainly discontinue their business relationship with Yak. NPI, as a competitor of Yak which manufactures and sells its competing Track Ball product, will directly benefit as a result because Yak's customers will look to replace the Screwball product that Yak is unable to deliver with a similar product that can be delivered (*i.e.*, NPI's Track Ball).

In other words, allowing NPI to disobey its promise and disregard Yak's orders creates the very real possibility that Yak will permanently lose its customers to NPI, as well as the goodwill it has established with these customers over the years, and which impacts Yak's ability to sell them other products in the future.

Accordingly, this factor favors granting Plaintiff's motion.

#### B.   Plaintiff is Likely to Succeed on the Merits.

At this early stage, Plaintiff need not provide that it is entitled to the remedy sought in the Complaint. *See Hotjobs.com, Ltd. v Digital City, Inc.*, 53 Va Cir 36, 42 (Cir Ct 2000) (noting that

- 6 -

[Plaintiff] need only raise a question "going to the merits so serious, substantial, difficult, and doubtful" as to be fair ground for litigation.)

In its Complaint, Yak has asserted, among other things, claims for breach of contract and tortious interference with contractual relations stemming from NPI's refusal to fulfill Yak's orders and supply it with product.

### 1. NPI Has Breached the Parties' Contract.

"The essential elements of a cause of action for breach of contract are: (1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that right or duty, and (3) a consequential injury or damage to the plaintiff." *Westminster Investing Corp. v. Lamps Unlimited*, 237 Va. 543, 546 (1989) (quoting *Caudill v. Wise Rambler*, 210 Va. 11, 13 (1969).

The law is clear that, when parties enter into a supply contract whereby one side agrees to manufacture and supply another with product upon receipt of an order, the supplier cannot unilaterally refuse to satisfy orders without first providing reasonable notice. *See Continental Elec. Contrs., Inc. v. Cardinal Lighting Co.*, 8 Va. Cir. 126, 132 (Cir. Ct. Fairfax Cnty. 1985) (concluding that the refusal by a seller to ship a product upon receipt of an order constitutes a breach of the contract between the parties); *Stonega Coal and Coke Co. v. Louisville & N.R. Co.*, 106 Va. 223 (1906) (reciting requirement that "reasonable notice" be delivered before termination of services contract can be deemed effective); *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998) (interpreting Virginia contract law and holding that "although the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise contractual discretion in bad faith"); *see also Cocoa Prods. Co. v Duche*, 156 Va 86, 97 (1931) (holding with respect to a shipment contract and a promise to deliver goods upon placement of an order that a series of dealings justifies a party, in

the absence of anything to the contrary, concluding that the shipment will be honored on account of conduct consistent with the same course of dealing without notice); *Smokeless Fuel Co. v. Seaton & Sons*, 105 Va. 170 (1906) (concluding that a shipment contract was enforceable because it was "clear and definite in its terms. . . . [and contained a] promise of the seller to deliver the coal as ordered, within the time prescribed, and the promise of the buyer to receive the same and pay the price agreed upon").

Here, NPI acknowledged Yak's orders (as it had done over the past several years). NPI did not communicate with Yak in advance of receiving these orders (and in advance of Yak promising its customers that it could fulfill orders) that it would have any issues fulfilling these orders. Indeed, NPI has never provided Yak with any notification relative to termination of the parties' agreement. Rather, NPI represented that Yak's orders would be fulfilled, even providing Yak with an estimated shipment date for fulfillment.

The gist of Yak's claim can be summarized with a single example. NPI has stated it will not ship Yak another order unless or until Yak agrees to cease calling its product, previously developed and well received by consumers, the Screwball. Instead, NPI demands that Yak now call the Screwball a Track Ball as a condition for NPI to ship any orders. Yak has refused for many reasons, not the least of which is the fact that the Screwball and Track Ball are two different products, that doing as NPI demands will deceive the public, and that if Yak were to do so, it would likely subject Yak to liability for falsely advertising a product and doing a "bait and switch" to the consumer (not to mention destroy Yak's relationship with its customers).

Based upon these unreasonable demands, among others, NPI has refused to fulfill Yak's orders, in bad faith and in breach of the parties' agreement that NPI would fulfill Yak's orders

- 8 -

and manufacture the Screwball exclusively for Yak (which promises Yak has the right to and did reasonably rely on). Thus, Yak is likely to succeed on its claim for breach of contract.

### 2. NPI's Refusal to Supply Yak Constitutes Tortious Interference with Yak's Contractual Relations.

The elements required for a prima facie showing of tortious interference are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Chaves v Johnson*, 230 Va 112, 120 (1985) (citing *Calbom v. Knudtzon*, 65 Wash. 2d 157, 162-63 (1964)). Where the third party contract is not terminable at will, "it is not necessarily a requirement to prove malice, ill will, or criminal or otherwise tortious act by Commercial. *Woodbury Constr. Co. v Commercial Cash Flow*, 55 Va Cir 295, 297-298 (Cir. Ct 2001) (citing *Maximus, Inc. v. Lockheed Information Management Systems Co.*, 254 Va. 408, 412 (1997).

As set forth in the Cithers Affidavit, Yak had certain contracts with big box customers and OEMs that were not terminable at will. NPI was aware of Yak's contracts with big box dealers and OEM customers because Yak often directed NPI to ship products to Yak's OEM customers directly, multiple times a year for the last four years.

One of the orders that Yak placed in March 2017, which NPI has refused to fulfill, was an order from one of Yak's OEM customers. The other order was placed to satisfy Yak's commitment to certain big box retailers.

When Yak placed the order for its OEM customer, it asked NPI to ship directly to that customer, and thus NPI was aware that Yak had already committed to sell its Screwball product to this customer. By refusing to ship this order despite acknowledgment and confirmation of

- 9 -

same, NPI has intentionally interfered with Yak's contract. Yak has been damaged accordingly, and faces the prospect of losing this customer in the absence of injunctive relief.

Thus, Yak is likely to succeed on its tortious interference claim.

### C.    Defendant Will Not Suffer Any Harm if the Injunction is Granted

As stated, NPI currently manufactures and sells its Track Ball product, a different and later-developed product of NPI that competes with Yak's Screwball product. Granting Yak's motion will only preserve the status quo and avoid the irreparable harm that Yak will otherwise suffer. It will not prevent NPI from continuing to sell its competing product. Stated differently, NPI will not suffer any harm if it is ordered to simply do what it promised (and is contractually obligated) to do.

### D.    The Public Interest Favors Granting Plaintiff's Motion

If Yak's motion is granted, the third parties who have placed orders with Yak for its Screwball product will have their orders fulfilled. Moreover, paddle sports industry consumers will continue to have a choice between the Screwball product and the Track Ball product. More importantly, the public will not be deceived or confused by being sold NPI's Track Ball under the name of Yak's Screwball, or worse yet, calling Yak's Screwball a Track Ball.

Of course the opposite is true of the injunction is not issued. In addition, other suppliers may conclude that they may breach contracts with their customers with impunity if a "better opportunity" presents itself because their customers have no meaningful remedy to account for loss of goodwill. "It is in the public interest to make it clear that Virginia courts will not hesitate to enforce contracts freely entered into by the parties thereto." *Hotjobs.com, Ltd.*, 53 Va. Cir. at 47. Thus, this factor also favors granting Plaintiff's motion.

## II.   FURTHER PROCEEDINGS IN THE WESTERN DISTRICT OF WASHINGTON SHOULD BE STAYED

As set forth in the Ciffers Affidavit, five days after Yak filed this action, NPI filed a lawsuit against Yak in the Western District of Washington.   That lawsuit is littered with inaccurate statements about Yak and the parties' course of dealings.   However, more importantly, that lawsuit involves the same subject matter that is the subject of Yak's first-filed lawsuit in this court – *i.e.*, NPI's obligations as it relates to fulfilling Yak's orders and the rights of the parties as it relates to product and name usage.   NPI's claims against Yak do not involve a different time period or a different business transaction.   Rather, they arise out of the parties' current business relationship.   Accordingly, NPI can pursue the relief that it seeks against Yak in this court through counterclaims.

There is no reason for the parties to litigate in two forums, which will result in a doubling of expenses and the potential for inconsistent rulings.   Because this case was filed before NPI filed its lawsuit in the Western District of Washington, pursuant to the "priority rule," this court may (and, respectfully, should) enjoin its parties from further action in the second court. *See, e.g., Martin v. Graybar Elec. Co.*, 266 F.2d 202, 203-205 (7th Cir. 1959); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 893 F.2d 26, 28-29 (2d Cir. 1990) (an injunction by the first court is appropriate "if the claims presented in the second action should have been interposed as compulsory counterclaims to the claims in the suit pending before it"); *see also Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974) ("Where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action. This rule is applicable even where the parties in the two actions are not identical." (internal citations omitted)); *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974) (observing that the Fourth Circuit

- 11 -

has adopted the Second Circuit's first-filed rule); *Hopeman Bros. v. Cont'l Cas. Co.*, 16-cv-0187, 2017 U.S. Dist. LEXIS 58491, at *27 (E.D. Va. Apr. 17, 2017) (granting motion to enjoin plaintiff in second-filed action "from prosecuting the second-filed action, pending disposition of the case before this Court").

## **CONCLUSION**

For the foregoing reasons, Plaintiff YakAttack, LLC, by its attorneys, respectfully requests an Order preliminarily enjoining Defendant National Products, Inc., d/b/a RAM Mounts from refusing to fulfill shipment orders placed by Yak pursuant to the parties' longstanding contractual relationship and NPI's acknowledgment of such orders, staying of further proceedings in the Western District of Washington, and otherwise preserving the status quo between the parties, together with such other relief as the Court deems just, fair and proper.

13409607.2

**DATED**:      May 9, 2017

BOSWELL & WILLIAMSON
ATTORNEYS AT LAW

By: _John M. Boswell_
John M. Boswell
Virginia Bar Roll No. 07415
*Attorneys for Plaintiff*
Office and Post Office Address
601 East Virginia Avenue
P.O. Box 45
Crewe, Virginia 23930
Telephone:  (434) 645-7338


HARRIS, MATTHEWS & CROWDER, P.C.

Calvin S. Spencer, J.
By: _John M. Boswell per telephone authority_
Calvin S. Spencer, Jr.
Virginia Bar Roll No. 41924
*Attorneys for Plaintiff*
Office and Post Office Address
111 E. Fifth Ave
P.O. Drawer G.
Kenbridge, Virginia 23944
Telephone:  (434) 676-2192


BARCLAY DAMON, LLP
Michael Oropallo
By: _John M. Boswell per telephone authority_
Michael Oropallo
*Temporary Pro Hac Admission*
*Attorneys for Plaintiff*
Office and Post Office Address
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone:  (315) 425-2831

- 13 -

**VIRGINIA:**

## IN THE CIRCUIT COURT OF NOTTOWAY COUNTY

| | |
|---|---|
| **YAKATTACK, LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Civil Case No. CL17-00005600 |
| ) | |
| **NATIONAL PRODUCTS, INC. D/B/A RAM** ) | |
| **MOUNTS,** ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

## <u>AFFIDAVIT</u>

State of Virginia:

County of Nottoway, to wit:

The undersigned, Luther Cifers, President of Plaintiff YakAttack, LLC, being duly sworn and states as follows:

1.      YakAttack, LLC ("Yak") is a limited liability corporation duly organized and conducting business under the laws of the State of Virginia, with a place of business at 609 2nd Street NW, Burkeville, Virginia 23922.

2.      Yak was founded in 2009 and has quickly grown as a leader in the kayak fishing industry – also known as the paddle sports industry – specializing in fishing gear and kayak rigging, including the manufacture and sale of paddle sports equipment.

3.      In about 2010, Yak began selling a product known as the YakAttack Screwball™ ("Screwball").

13414732.1

4.     As shown below, the Screwball, which maintains RAM branding for NPI's component parts, is a ball-shaped product, with a rounded head, a hole drilled into the top, and a base with a bolt and attachment that allows it to attach to a track system along the kayak.



5.     Originally, Yak purchased off the shelf Pin Lock Balls from NPI and drilled several different sized holes into the top, experimenting with numerous designs until finally creating a hole size and placement best suited for accessories.  Yak also conceived of adding a tee bolt attachment to the base, enabling the ball to be attached to Yak's track system by simply rotating it to tighten it to the track.

6.     The result was a unique design that was the first of its kind and ideal for multiple accessories.

13414732.1

7.　　In about February 2012, I approached Jeff Carnevali, the Chief Executive Officer ("CEO") at NPI with several questions about NPI's Pin Lock Ball. *See* Emails of February 6, 2012 attached as Exhibit C to the Attorney Affidavit of Michael A. Oropallo ("Oropallo Affidavit").

8.　　First, I explained to Jeff how I was modifying NPI's Pin Lock Ball. *Id.* ("we currently ream the center hole in the 1.5" pin lock ball so we can press in a threaded insert *for our Screwball* ...").

9.　　Second, I asked if NPI would be willing to quote a price to manufacture the Screwball instead of Yak drilling the Pin Lock Balls. *Id.*

10.　　Jeff responded by telling me that NPI would be happy to manufacture Yak's Screwball. *Id.*

11.　　Jeff also agreed that Yak would have "exclusivity" in the paddle sports market for the Screwball. *Id.*

12.　　Before Yak agreed to have NPI manufacture its Screwball, I personally insisted on having a conversation and reaching an understanding with NPI's CEO, that if Yak grew in the paddle sports industry, NPI would not later undermine Yak's efforts.

13.　　NPI's CEO agreed to that understanding in writing. *See* Email of March 21, 2012 attached as Exhibit D to the Oropallo Affidavit. ("You can trust me that I won't take anything away from your efforts...").

14.　　Yak was not a casual customer of NPI.  Yak helped get NPI's products into the paddle sports industry, where NPI had been unsuccessful in gaining significant market shares in the past, in spite of their best efforts to do so.  The parties communicated regularly, and Yak's orders and NPI's profits from the business arrangement continued to grow.

- 3 -

15.     Since 2012, Yak and NPI have done hundreds of thousands, if not millions, of dollars of business with each other.

16.     Yak purchases three categories of products from NPI:  1) Private Label products, such as the Screwball and Zooka Tube, which are products Yak developed and which have been named, referred to, and even labeled as such by both NPI and Yak; 2) OEM, where Yak buys loose components for Yak's accessories; and 3) Distribution, where Yak acts as a reseller of NPI products.

17.     Typically, Yak spends mid-six figures on purchases from NPI, with at least fifty percent of the products Yak purchases from NPI being Yak's private labelled Screwball and Zooka Tube.

18.     Yak uses its best efforts to give attribution to NPI for Yak's use of NPI component products.

19.     Yak sells to "big box" stores like Cabela's; to independent specialty shops; and to others like kayak manufacturers (that purchase OEM products from Yak as a reseller).

20.     NPI is aware of Yak's customers, and even drop-ships to some of them.

21.     For example, for at least a year, Yak has asked NPI to ship product directly to OEM customers like Nucanoe, which requests Yak has made of NPI after agreeing with its customers to provide product.

22.     Yak has been a good customer to NPI, and has always paid NPI on terms it agreed to.

23.     The parties' relationship was mutually beneficial and proceeded as it had for about five years, with Yak placing orders on roughly a monthly basis, and NPI delivering within a few weeks after regular confirmation or acknowledgement of each order.

- 4 -

24.     In early 2017, I was asked by NPI if we could formalize the agreement we had been operating under for the past five years. I had no objection to that. In fact, I thought it was a good idea as I had asked for clarification on certain product advertisements over the years and received at times confusing or ambiguous direction from NPI.

25.     What I did not expect was a letter from a lawyer.

26.     In February 2017 I received a letter from NPI's attorney that contained certain requests that I considered reasonable, but others that I did not.

27.     The letter did not ask if I was represented by an attorney, nor did it suggest that I get one.

28.     Even though I have worked with a lawyer from time to time, I did not think I had to obtain one.

29.     That is, until NPI told me that if I didn't agree to the terms of its letter, NPI would stop shipping products to me, including two recent orders I had placed.

30.     One of the issues I had with NPI's demands is they wanted me to assign Yak's Screwball trade name to them, which I refused. They also wanted me to start calling Yak's Screwball a Track Ball, which I knew to be a different product. I was unwilling to deceive or confuse my customers by doing so.

31.     I designed and developed the Screwball in 2010.

32.     Yes, NPI had been exclusively manufacturing the Screwball for Yak since about 2012, but they had assured me I could trust them, and they would not "take anything away from [my] efforts."

33.     Over the years, and even though I had an exclusive agreement in the paddle sports industry from NPI, I agreed to let NPI sell a couple of similar but different – and clearly

13414732.1

differently labeled – products, such as its Track Ball and RAM Tube Jr. I did so because of the relationship we had developed.

34.     However, Yak's Screwball has always been described and advertised as a Yak product, and has been described in advertising as "Screwball".



35.     NPI's Track Ball, which was not developed until 2013, differs significantly from Yak's Screwball, and has been described in advertising as "Track Ball".



## RAM 1" Track Ball™ with T-Bolt Attachment

The RAM Track Ball is made up of a B size 1" rubber ball molded to a high strength composite base, a rubber friction washer and a stainless steel T-bolt for sliding into virtually any track system. Simply insert or slide the Track Ball into your track and twist the ball clockwise to tighten in place. Twist counterclockwise to loosen or adjust the ball.

  **T-Bolt Dimensions:** .48" x .95"

36.     So when NPI demanded I start calling Yak's Screwball a Track Ball, not only was that contrary to what had been agreed on, it was *wrong!*

37.     And it would be deceptive and false to consumers.

38.     Because I wouldn't agree to do something that was not true, was wrong, and that would be confusing to my customers, if not subject Yak to liability for doing, I refused.

39.     Based on this refusal, NPI has elected to disregard the terms of our agreement in an effort to wrongfully force Yak out of the marketplace.

40.     NPI has done so by refusing to fulfill orders that I placed on March 1st and 22nd, even though NPI provided acknowledgements and delivery dates with respect to these orders, and even though NPI knew when I placed one of these orders that it was for a large customer to whom I already agreed to provide product.  Attached as Exhibit E to the Oropallo Affidavit are copies of those orders.

41.     NPI told me it did not fulfill these orders because I wouldn't agree to call Yak's Screwball a Track Ball.  However, I understand NPI first told my attorney it was because of delays.

42.     Because NPI is not filling Yak's orders, Yak is losing business.  Especially, from big box stores like Cabela's.

43.     As NPI knows, Yak's business is seasonal in nature.

44.     Most contracts require an initial "stocking season" order be filled in January/February, which represents about twenty-five to thirty-five percent of annual sales.  The rest is made up of "fill-in" orders, that are made periodically throughout the remainder of the year.

45.     The peak of the season is May/June as NPI also knows.

46.     NPI's refusal to ship Yak's orders, as NPI had previously done regularly on at least a monthly basis, *during this critical period* of the year, has already cost Yak tens of thousands of dollars.

- 7 -

47.     Unless NPI resumes shipping immediately, Yak will not only lose thousands more, but will be in jeopardy of forever losing certain accounts.

48.     Further, and as noted above, Yak has regularly done business with many kayak manufacturers by selling OEM products manufactured by NPI.

49.     NPI has been aware of Yak's customer base, and in fact regularly drop-ships NPI's OEM parts to Yak's customers, in accordance with NPI's exclusive agreement with Yak for such.

50.     In addition to causing direct harm to Yak by not shipping one of the March orders *to one of Yak's OEM customers*, it is my understanding that NPI has been in contact with these known customers of Yak, and has offered to ship these OEM parts directly to Yak's customers.

51.     I am an honest person who prides myself on always treating others fairly and doing the right thing.

52.     Although I have tried, and my attorneys have tried, NPI refuses to ship me product, continues to make unreasonable demands, and continues its attempt to force me to sign an agreement that states things that are not true.

53.     For example, while my attorneys were trying to negotiate a settlement with NPI's attorneys, I learned that NPI's attorneys failed to get back to my attorneys with a proposal.  I also know that NPI has a tendency to be litigious.

54.     Accordingly, and as a precaution, my attorneys filed this case in Virginia, but did not seek to serve it upon NPI.  In fact, I understand it would never have been served on NPI if negotiations had continued in good faith.

- 8 -

55.     Yak is fortunate this lawsuit was filed because the following week, instead of contacting my attorneys to resolve NPI's non-fulfillment of Yak's orders, NPI's attorneys sent my attorneys a copy of a complaint they filed on NPI's behalf in Washington State.

56.     I have reviewed that complaint (attached as Exhibit B to the Oropallo Affidavit). It is loaded with misrepresentations and untruths.  For example:

a.     In Paragraph 23, NPI states, "YakAttack's marketing materials for the RAM® Track Ball™ mislabels the product as a YakAttack Screwball product."   *But that statement is incorrect.*  First, as noted above, and as the emails of 2012 prove, YakAttack designed and developed the Screwball on its own.  Second, the Track Ball (as NPI acknowledges in its own Complaint at Paragraph 16), was note even in existence until *March 13, 2013.*  Third, YakAttack's Screwball is a different product than NPI's Track Ball.  *See supra.*  While it is true that both the Screwball and the Track Ball are modified versions of NPI's Pin Lock Ball, the Screwball differs significantly, and was first in production, far earlier than the Track Ball.

b.     In Paragraph 32, NPI says it "recently discovered" that NPI's brands and trademarks were not being used correctly.  First, except for an isolated instance or two over the years of their business arrangement, which Yak almost always immediately corrected on its own, Yak used its best efforts to always give NPI attribution for its products.  Second, Yak has been advertising its products in the same manner for years.  Third, Yak has asked for attribution guidelines from NPI many times over the years, and has always made its best efforts to comply with NPI's verbal, requests related to such.  NPI now claims for some reason, and despite being apparently satisfied with Yak's efforts for *five years,* that it was being done incorrectly.

c.     In Paragraph 50, NPI again incorrectly seeks to equate the RAM® Track Ball to Yak's Screwball.  Again, Yak is not asking, nor has ever asked, NPI to exclusively (or

- 9 -

non-exclusively) supply NPI's Track Ball to Yak. What Yak asks, and what has always been the case, is for NPI to supply Yak with the Screwball Yak created, and NPI agreed would be supplied to Yak on an exclusive basis.

      d.    In Paragraph 54, NPI again misstates that the Yak Screwball is a misbranded RAM Track Ball. They are two different products, and Yak's Screwball has always been known as such, and preexisted the Track Ball by at least three years. Those familiar with paddle sports market, both resellers and consumers, identify a track mounted ball as a Screwball, not a Track Ball.

      e.    In Paragraph 58, NPI says the "misbranding" is "deliberate and intended to confuse the public ... as to the source ...." However, the opposite is what is true. NPI has demanded that Yak "re-brand" its preexisting Screwball as NPI's different and later-developed Track Ball.

57.    Bottom line, NPI and its attorneys are either mistaken, or they are deliberately attempting to deceive the public (and the Washington court) by trying to equate Yak's Screwball with NPI's Track Ball. A simple review of historic emails and the two products will put an end to that "misunderstanding."

58.    As a result, and because of NPI's refusal to ship me the products I designed, Yak has been damaged, the damage is continuing, and I am in jeopardy of losing business forever.

59.    Although I continue to try to find replacement products for those NPI refuses to ship, I have been unable to do so for at least several reasons:

      a.    NPI has alleged that some of the components are protected by patents, and has sued me.

       b.     I have not yet located an alternative manufacturer for the products, nor would a manufacturer likely do business with me under the circumstances.

       c.     My agreements with customers call for certain products that include product descriptions and advertisements, so I am unable to deviate from them.

       d.     By the time Yak would be able to redesign products or find alternate sources, the season will be over. As noted above, NPI knows of the seasonal nature of this business. Had NPI given Yak reasonable notice that it intended to terminate the exclusive agreement it had with Yak in late 2016, then Yak may have been able to find an alternative. However, unilaterally refusing to ship to Yak at this time of the year is certain to cause Yak irreparable harm.

60.     To date, NPI has never given Yak notice that NPI is terminating its long time and exclusive agreement with Yak, let alone reasonable notice sufficient to allow Yak enough time to find an alternate source for its products.

61.     I ask that the Court order NPI to fill the existing orders, to continue to do business as usual, and to maintain the status quo, until either NPI gives Yak reasonable notice that it is going to terminate the agreement or until this Court has decided this case.

By: _____

Luther Cifers, President of
YakAttack, LLC

State of Virginia,
County of Nottoway,

Sworn to and acknowledged before me this _9th  ᴼᴮ_  day of May, 2017, by Luther Cifers,
President, YakAttack, LLC.

Carolyn O. Bowman

Notary Public

My commission expires: 11/30/2020
Reg. # 157461

NOTARIAL SEAL:



13414732.1

**VIRGINIA:**

## IN THE CIRCUIT COURT OF NOTTOWAY COUNTY

| | |
|---|---|
| YAKATTACK, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -*vs*- | ) |
| | )     Civil Case No. CL17-00005600 |
| NATIONAL PRODUCTS, INC. D/B/A RAM MOUNTS, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## <u>AFFIDAVIT</u>

State of New York:

County of Onondaga, to wit:

      The undersigned, Michael A. Oropallo, counsel for Plaintiff YakAttack, being duly sworn and states as follows:

      1.      To the best of my knowledge and belief, all allegations contained in the Bill for Injunction are correct.

      2.      Attached as Exhibit A is a true and accurate copy of the Complaint in this action, filed by Plaintiff YakAttack, LLC ("Yak") against Defendant National Products, Inc. d/b/a RAM Mounts ("NPI") on April 19, 2017.

      3.      Attached as Exhibit B is a true and accurate copy of the Complaint subsequently filed by NPI against Yak on April 24, 2017 in the United Stated District Court for the Western District of Washington at Seattle.

4.      Attached as Exhibit C is a true and accurate copy of e-mail communications between the parties dated February 6, 2012.

5.      Attached as Exhibit D is a true and accurate copy of e-mail communications between the parties dated March 21, 2012.

6.      Attached as Exhibit E is a true and accurate copy of confirmations for orders placed on March 1, 2017 and March 22, 2017.

**WHEREFORE**, Plaintiff YakAttack, LLC, by its attorneys, respectfully requests an Order preliminarily enjoining Defendant National Products, Inc., d/b/a RAM Mounts from refusing to fulfill shipment orders placed by Yak pursuant to the parties' longstanding contractual relationship and NPI's acknowledgment of such orders, staying of further proceedings in the Western District of Washington, and otherwise preserving the status quo between the parties, together with such other relief as the Court deems just, fair and proper.

13413655.1

By: _____

Michael A. Oropallo, of Counsel for
YakAttack, LLC

Sworn to and acknowledged before me this _____9_____ day of _May_ , 2017 by
Michael A. Oropallo.

_____
Notary Public
My commission expires: __10/26/18__

NOTARIAL SEAL:

Melinda D. VanLiew
01VA5003500
Notary Public, State of New York
Qualified in Cayuga County
Commission Expires October 26, 20__18__

- 3 -

# Exhibit A

**VIRGINIA:**

### IN THE CIRCUIT COURT OF NOTTOWAY COUNTY

| | |
|---|---|
| **YAKATTACK, LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Civil Case No. |
| ) | |
| **NATIONAL PRODUCTS, INC. D/B/A RAM** ) | JURY TRIAL DEMANDED |
| **MOUNTS,** ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

### COMPLAINT

Plaintiff YakAttack, LLC, by its attorneys, Boswell & Williamson and Harris, Matthews & Crowder, P.C., as and for its Complaint against Defendant National Products, Inc. d/b/a RAM Mounts, hereby represents as follows:

### PARTIES

1.      Plaintiff YakAttack, LLC, ("Yak") is a limited liability corporation duly organized and conducting business under the laws of the State of Virginia, with a place of business at 609 2nd St NW, Burkeville, Virginia 23922.

2.      Upon information and belief, Defendant National Products, Inc. d/b/a RAM Mounts ("NPI") is a corporation duly organized and conducting business under the laws of the State of Washington, with a place of business at 8410 Dallas Avenue South, Seattle, Washington 98108, USA.

## JURISDICTION

3.      This court has jurisdiction pursuant to VA. Code Ann. §§ 8.01-620 (power of circuit courts to issue injunctive relief) and 8.01-184 (power of circuit courts to issue declaratory judgments).

4.      This Court has personal jurisdiction over Defendant under VA. Code Ann. § 8.01-328.1(1)-(4) because Defendant regularly transacts business in Nottoway County, contracts to supply things to Nottoway County, and caused tortious injury by its acts in Nottoway County.

## VENUE

5.      Venue is preferred before this Court under VA. Code Ann. § 8.01-261(15)(c). The acts at issue are occurring in Nottoway County. Venue is permissible before this Court under VA. Code Ann. § 8.01-262(3)-(4), (10). Plaintiff, evidence, and fact witnesses are located within Nottoway County. Defendants regular conduct substantial business activity within Nottoway County, and the cause of action underlying this Complaint arose within Nottoway County.

## BACKGROUND

6.      Yak was founded in 2009 and has quickly grown into a leader in the kayak fishing industry, specializing in kayak fishing gear and kayak rigging, including the manufacture and sale of paddle sports equipment.

7.      At all relevant times Yak did business in Nottoway County, Virginia.

8.      Following its formation, Yak – and its Principal and President, Luther Cifers – developed an innovative way to attach accessories to a kayak.

9.      One of Yak's developments was a tracking system that can be attached to the surface of a kayak, and allows for the attachment of Yak accessories.

13303744.4

10.     Upon information and belief, NPI is an original equipment manufacturer of mounting systems for electronic equipment for dozens of partners.

11.     Upon information and belief, NPI also sells and distributes its own branded products, including mounts for non-electronic equipment.

12.     Beginning in or about 2012, Yak entered into an arrangement with NPI to have NPI manufacture certain private label paddle sport products for Yak consistent with Yak's developed tracking system.

13.     One of the products that Yak contracted NPI to manufacture was Yak's "Screwball" invention.

14.     The "Screwball" has a rounded head with a hole drilled through the top, and a base that screws into the tracking system so that the product can slide along the tracks.

15.     Other Yak accessories can be attached to the head of the "Screwball" as shown below.



16.     Initially, Yak purchased the ball from NPI and modified it. Later, Yak created the hole in the rounded head, designing the size of the hole for the attachment of its accessories.

17.     Eventually, Yak contracted NPI to exclusively manufacture the Screwball for Yak and the paddle sports industry.

18.     Yak advertised, sold, and shipped the "Screwball" product under the "Screwball" name and the packaging for the product reflected that name as shown below.

- 4 -



19.     As a result, customers in the paddle sports market have come to associate the "Screwball" product with Yak.

20.     These customers have purchased the "Screwball" product under Yak's trade name.

21.     Although the parties never entered into a formal written agreement, electronic communications memorialized their business arrangement.

22.     For a time, the parties' relationship progressed without interruption or incident.

**NPI'S CONDUCT GIVING RISE TO THE CLAIMS HEREIN**

23.     On or about February 8, 2017, NPI notified Yak of its intention to expand its distribution of mounting for paddle sports and requested that the parties' business arrangement be reduced to a formal written contract.

24.     Yak agreed to engage in discussions over the terms of this written agreement, and has attempted to work with NPI to draft an agreement that is consistent with the parties' course of dealings and rights at law.

25.     However, NPI has improperly demanded that Yak must assign all its rights in the trade name "Screwball" to NPI.

- 5 -

26.     NPI has further improperly sought to assert intellectual property rights of its own, and rename Yak's trademarked product as "RAM® Track Ball."

27.     In fact, NPI is currently advertising "Track Ball" as one of its trademarked products.

28.     NPI has also represented that it has patents and/or pending patent applications associated with the "Screwball" product.

29.     Upon information and belief, NPI intends to market Yak's "Screwball" product under its "Track Ball" trade name, which will undoubtedly result in customer confusion.

30.     In addition to causing customer confusion in the paddle sports market, NPI's marketing of the Yak's "Screwball" product under its "Track Ball" trade name will dilute and impair Yak's goodwill and common law rights associated with the "Screwball" product.

31.     Upon information and belief and in an attempt to increase its bargaining position, NPI now refuses to ship orders that NPI already agreed to, in breach of its promise to fulfill those orders and the parties' long time business arrangement.

32.     Upon information and belief, NPI has solicited Yak's third-party customers, and offered to service their needs directly.

33.     Although Yak has a great relationship with its customers, Yak is now falling behind on its orders to big box stores due to NPI's conduct, endangering its business.

- 6 -

## COUNT I

### BREACH OF CONTRACT

34.     Plaintiff repeats and re-alleges each of the allegations set forth above as if set forth in full.

35.     Yak and NPI entered into a business agreement, (the "Agreement"), memorialized by e-mails and their course of conduct, whereby NPI would exclusively manufacture for Yak and the kayak/paddle sports industry.

36.     Pursuant to the Agreement, NPI acknowledged and understood that Yak's "Screwball" products belong to Yak.

37.     Pursuant to the Agreement, NPI agreed to fulfill Yak's orders according to agreed upon price terms.

38.     Yak recently placed orders with NPI.

39.     To date, NPI has failed, refused, and otherwise neglected to fulfill these orders and ship products to Yak.

40.     By reason of such failure, NPI is in breach of its obligations under the Agreement.

41.     As a result of the foregoing, Plaintiff is entitled to Judgment awarding damages in an amount to be determined at Trial, including consequential damages, plus accrued interest.

## COUNT II

### TORTIOUS INTERFERENCE WITH CONTRACT AND INTERFERENCE WITH BUSINESS EXPECTANCY

42.     Plaintiff repeats and re-alleges each of the allegations set forth above as if set forth in full.

43.     Yak has valid and enforceable contracts and/or longstanding and established business relationships with its third-party customers.

- 7 -

13303744.4

44.     NPI was aware of these valid and enforceable contracts and/or business relationships between Plaintiff and its third-party customers.

45.     NPI intentionally refused and continues to refuse to ship the products to Yak and upon information and belief, instead has unlawfully contacted and continues to contact Yak's customers directly in order to obtain their business without any participation of and/or payment to Yak.

46.     Yak has directed NPI to stop this practice and NPI has ignored these requests.

47.     As a result of NPI's improper methods, Yak has suffered and will continue to suffer substantial irreparable harm, including the actual loss and potential loss of business, customers, trade secrets, confidential and proprietary information, competitive advantage and goodwill.

48.     As a result of the foregoing, Plaintiff is entitled to an Injunction preventing Defendant from further solicitation of Plaintiff's customers as it relates to Yak's products.

49.     As a result of the foregoing, Plaintiff is entitled to Judgment awarding damages in an amount to be determined at Trial, plus accrued interest.

## COUNT III

### UNFAIR COMPETITION CONCERNING TRADE NAME UNDER VIRGINIA LAW

50.     Plaintiff repeats and re-alleges each of the allegations set forth above as if set forth in full.

51.     Yak's "Screwball" name associated with the "Screwball" product has acquired secondary meaning and significance in the paddle sports market that identifies Yak as the source of goods due to its continued packaging and sales of the product under the "Screwball" name.

- 8 -

52.     NPI now attempts to unfairly sell the same product under the "RAM® Track Ball" name.

53.     NPI's conduct will prejudice Yak's interest as the marketing of the "Screwball" product under the "Track Ball" trade name will dilute and impair Yak's established goodwill and common law rights associated with the "Screwball" product.

54.     As a result of the foregoing, Plaintiff is entitled to an Injunction preventing Defendant from further marketing and sale of the "Screwball" product under the "RAM® Track Ball" name.

55.     As a result of the foregoing, Plaintiff is entitled to Judgment awarding damages in an amount to be determined at Trial, plus accrued interest.

## COUNT IV

### UNFAIR TRADING CONCERNING TRADE NAME UNDER VIRGINIA LAW

56.     Plaintiff repeats and re-alleges each of the allegations set forth above as if set forth in full.

57.     Yak's "Screwball" name associated with the "Screwball" product has acquired secondary meaning and significance in the paddle sports market that identifies Yak as the source of goods due to the packaging and sale of the product under the "Screwball" name.

58.     NPI now attempts to unfairly sell the same product under the "RAM® Track Ball" name.

59.     NPI's conduct will deceive consumers in the paddle sports market place who have come to associate the "Screwball" product with Yak and the "Screwball" name, allowing NPI's product to be "palmed off" to buyers who mistake it for Yak's product, and allowing NPI to reap financial profits resulting from its deception.

- 9 -

60.     The same profits would be unfairly, and fraudulently, diverted from Yak.

61.     As a result of the foregoing, Plaintiff is entitled to an Injunction preventing Defendant from further marketing and sales of the "Screwball" product under the "RAM® Track Ball" name.

62.     As a result of the foregoing, Plaintiff is entitled to Judgment awarding damages in an amount to be determined at Trial, plus accrued interest.

## COUNT V

## EQUITABLE ESTOPPEL

63.     Plaintiff repeats and re-alleges each of the allegations set forth above as if set forth in full.

64.     For several years, NPI was aware that Yak marketed and sold the "Screwball" product under Yak's "Screwball" name without objection.

65.     Through that conduct, NPI waived any right to object to Yak's marketing and sale of the "Screwball" product under Yak's "Screwball" name, and induced Yak's good faith reasonable reliance on their continued dealings as established by their past conduct.

66.     Specifically, Yak relied on NPI to provide the subject goods to Yak as NPI had in their past dealings.

67.     NPI now attempts to unfairly sell the same product under the "RAM® Track Ball" name.

68.     As a result of the foregoing, Plaintiff is entitled to an Injunction preventing Defendant from further marketing and sales of the "Screwball" product under the "RAM® Track Ball" name.

- 10 -

69.     As a result of the foregoing, Plaintiff is entitled to Judgment awarding damages in an amount to be determined at Trial, plus accrued interest.

**WHEREFORE,** Plaintiff YakAttack, LLC, by its attorneys, respectfully requests judgment against Defendant:

A.     Imposing a permanent injunction preventing Defendant from soliciting Plaintiff's third-party customers and otherwise preserving the status quo between the parties;

B.     Imposing a permanent injunction preventing Defendant from further marking and sale of the "Screwball" product under any other trade name;

C.     Awarding specific performance of Yak's contracts and orders;

D.     Awarding damages in an amount to be determined at trial; and

E.     For such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

In accordance with Rule 3:21 of the Supreme Court of Virginia, Plaintiff hereby demands a trial by jury of all claims and issues so triable.

13303744.4

**DATED**:      April 18, 2017

**BOSWELL & WILLIAMSON**
**ATTORNEYS AT LAW**

By

John M. Boswell
Virginia Bar Roll No. 07415
*Attorneys for Plaintiff*
Office and Post Office Address
601 East Virginia Avenue
P.O. Box 45
Crewe, Virginia 23930
Telephone:  (434) 645-7338

**HARRIS, MATTHEWS & CROWDER, P.C.**

By:

Calvin S. Spencer, Jr.   *per telephone*
Virginia Bar Roll No.   *authority to*
*Attorneys for Plaintiff*   *John M. Boswell*
Office and Post Office Address
111 E. Fifth Ave
P.O. Drawer G.
Kenbridge, Virginia 23944
Telephone:  (434) 676-2192

**BARCLAY DAMON, LLP**

By:

Michael Oropallo   *per telephone authority*
*Pro Hac admission to be requested*   *to John M. Boswell*
*Attorneys for Plaintiff*
Office and Post Office Address
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone:  (315) 425-2831

- 12 -

*Page 1 of 1*

Receipt : 1700001809

COURT ADDRESS:
P.O. BOX 25
NOTTOWAY, VA 23955
PHONE # :434-645-9043

## OFFICIAL RECEIPT
## NOTTOWAY CIRCUIT COURT
### CIVIL

**DATE** : 04/19/2017  **TIME** : 12:06:30

**RECEIPT #** : 1700001809 **TRANSACTION #** : 170419000010

**CASHIER** : LEL  **REGISTER #** : A285

**CASE #** : 135CL1700005600

**CASE COMMENTS** : YAKATTACK LLC v. NATIONAL PRODUCTS INC

**FILING TYPE** : COM  **PAYMENT** : FULL PAYMENT

**SUIT AMOUNT** : $50,000.00

**ACCOUNT OF** : YAKATTACK LLC

**PAID BY** : BOSWELL & WILLIAMSON PC

  **CHECK** : $234.00  **C-BCK NUMBER** : 6276

**DESCRIPTION 1** : COM:COMPLAINT - CATCH-ALL

  2 : PLAINTIFF: YAKATTACK LLC

  3 : NO HEARING SCHEDULED

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 049 | WRIT TAX (CIVIL) | $15.00 |
| 123 | LEGAL AID SERVICES | $9.00 |
| 170 | COURT TECHNOLOGY FUND | $10.00 |
| 229 | COURTHOUSE MAINTENANCE FEE (CHMF) | $2.00 |

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 106 | (TTF) TECHNOLOGY TRUST FUND FEE (CIRCUIT COURT) | $5.00 |
| 147 | INDIGENT ASSISTANCE (INA) | $1.00 |
| 219 | LAW LIBRARY | $2.00 |
| 304 | CIVIL FILING FEE (LAW & EQUITY) | $190.00 |

**TENDERED : $**  234.00

**AMOUNT PAID : $**  234.00

**CLERK OF COURT** : *JANE L. BROWN*

PAYOR'S COPY  RECEIPT COPY 1 OF 3

# Exhibit B

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

NATIONAL PRODUCTS INC.,

Case No. 2:17-cv-00646

10

Plaintiff,

11

v.

**COMPLAINT**

12

YAKATTACK LLC,

**JURY TRIAL DEMANDED**

13

Defendant.

14

15       Plaintiff National Products Inc. ("NPI") brings this action against Defendant YakAttack,

16 LLC ("Defendant" or "YakAttack") for an injunction, damages, declaratory judgment, and other

17 appropriate relief.  NPI states and alleges as follows:

18

**THE PARTIES**

19

20       1.     NPI is a corporation organized and existing under the laws of the State of

21 Washington, having its principal place of business at 8410 Dallas Ave S., Seattle, Washington

98108.

22

23       2.     On information and belief, defendant YakAttack is a corporation organized and

24 existing under the laws of the State of Virginia, having its principal place of business at 24601

Genito Rd., Amelia, Virginia 23002.

25

26

**JURISDICTION AND VENUE**

27       3.     This action arises in (i) Unfair Competition and False Designation of Origin under

28

COMPLAINT
Case No. 2:17-cv-00646

- 1 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

1  the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (ii) False Advertising under the Lanham Act, 15

2  U.S.C. § 1125(a)(1)(B); (iii) Unfair Business Practices under RCW 19.86 *et seq.*; (iv) Unfair

3  Competition under Washington common law; (v) Unjust Enrichment under Washington common

4  law; (vi) Breach of Contract; and (vii)-(viii) under 28 U.S.C. §§ 2201 and 2202 for declaratory

5  relief relating to contractual matters.

6      4.    This Court has original subject matter jurisdiction over NPI's Lanham Act claims

7  pursuant to 15 U.S.C. § 1121 and 28 U.S.C §§ 1331 and 1338(a) and (b).  NPI also asserts claims

8  under Washington law, which are so related to the federal question claims that they are part of

9  the same case and controversy, and therefore fall within the scope of this Court's supplemental

10  jurisdiction pursuant to 28 U.S.C. § 1367(a).  In addition, because the matter in controversy

11  exceeds $75,000, exclusive of interest and cost, and is between citizens of different states, this

12  Court also has jurisdiction under 28 U.S.C. § 1332.

13      5.    This Court has personal jurisdiction over Defendant because Defendant has

14  engaged in business activities in and directed to this judicial district and the State of Washington

15  and has committed the tortious acts complained of in this judicial district and the State of

16  Washington.  On information and belief, Defendant markets, distributes, and retails products in

17  violation of NPI's rights.  On information and belief, Defendant sells infringing products directly

18  through websites to the public throughout the United States, including this judicial district.  In

19  addition, Defendant has transacted business with NPI in this judicial district and the State of

20  Washington, including by entering into agreements with NPI relating to the purchase and resale

21  of NPI's products.

22      6.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b).

23          **NPI'S BUSINESS AND TRADEMARKS**

24      7.    NPI was founded by Jeff Carnevali in Seattle in 1992.  NPI is in the business of

25  manufacturing and selling, among other products, mounting systems and device mounting

26  solutions ("RAM® Products").  The most innovative product line of its kind, RAM® is one of the

27  most sought-after brands of device mounting systems and solutions in a wide variety of

28  COMPLAINT            - 2 -            FENWICK & WEST LLP
Case No. 2:17-cv-00646          1191 SECOND AVENUE, 10TH FLOOR
          SEATTLE, WASHINGTON 98101
          TELEPHONE 206.389.4510
          FACSIMILE  206.389.4511

1  applications.  For over two decades, RAM® Products have received wide acclaim in the industry

2  and consumer press, and have established an industry-wide reputation for innovation, quality,

3  and performance.  RAM® Products have become an essential mounting system for a wide variety

4  of applications including rugged vehicle, industrial, military and defense, guns, fishing,

5  photography, aviation, and material handling, as well as any application requiring a robust

6  mounting solution.  RAM® Products were even used on the space shuttle.

7        8.      RAM® Products are manufactured in Seattle, Washington. NPI is committed to

8  providing customers with top-quality products using locally sourced materials.

9        9.      NPI also provides a lifetime warranty to customers who purchase RAM® Products

10 from authorized resellers.  Under NPI's lifetime warranty, NPI will repair or replace any product

11 or part manufactured by NPI that is found to be defective.

12       10.     NPI has received accolades and awards for its RAM® Products from diverse

13 institutions such as General Motors ("GM") Design, Specialty Equipment Market Association

14 ("SEMA"), and the Consumer Technology Association, and has been discussed in the press since

15 1994.  In the past 23 years, NPI has sold approximately 55 million RAM® Products.

16       11.     NPI's trademarks associated with its RAM® Products include, but are not limited

17 to, RAM® Trademark, the Hourglass Shape Design Trademark, and the Track Ball™ Trademark

18 (collectively, "NPI's Trademarks").

19

20

21

22

23

24

25

26

27

28

COMPLAINT                              - 3 -                    FENWICK & WEST LLP
Case No. 2:17-cv-00646                                          1191 SECOND AVENUE, 10TH FLOOR
                                                               SEATTLE, WASHINGTON 98101
                                                               TELEPHONE 206.389.4510
                                                               FACSIMILE  206.389.4511

12.    NPI owns the following U.S. trademark registrations for its trademarks:

| Mark | Reg. No. | Reg. Date | Description / Goods & Services |
|---|---|---|---|
| RAM | 2,629,952 | 10/08/2002 | Universal mounting linkages comprising a base and gasket, a ball and arm with socket, bolts, springs, washers and threaded tightening knob, made primarily of metal, to be used with a variety of custom components to mount a wide variety of items from electronic devices to fishing rod holders.

Universal mounting linkages comprising a base and gasket, a ball and arm with socket, bolts, springs, washers and threaded tightening knob, made primarily of non-metal, to be used with a variety of custom components to mount a wide variety of items from electronic devices to fishing rod holders. |
| (Hourglass design)<br> | 4,254,086 | 12/4/2012 | The mark consists of a three-dimensional configuration of a double socket mount arm that is tapered in the middle like an hourglass.  The dotted lines outlining the ends of the mount and the adjustment knob indicate placement of the mark on the goods and are not part of the mark.

For: Metal universal mounts comprising a base, arms with sockets, balls, bolts and tighteners, to be used with a variety of custom components to mount a wide variety of items, namely, electronic devices and sporting equipment; parts for the aforementioned goods, namely, double socket metal mount arms

For: Mounts for electronic devices and sporting equipment specially adapted for use in vehicles. |

13.    NPI also owns the "Track Ball" trademark, which describes NPI's product comprising a rubber ball molded to a plastic or metal base with female threads or a hole for accepting a bolt, screw, threaded back plate, or the like.

COMPLAINT                                                          - 4 -
Case No. 2:17-cv-00646

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

14.     Since 1995, NPI has continuously and exclusively used the RAM® mark in commerce in association with its RAM® Products.  On May 8, 2000, NPI filed an application with the Patent and Trademark Office ("PTO") to register its RAM® mark on the Principal Register.  On October 8, 2002, the PTO granted the application for the RAM® mark and issued a registration certificate for U.S. Trademark Registration No. 2,629,952 to NPI.  A true and correct copy of the registration certificate for NPI's RAM® mark is attached hereto as **Exhibit A**.

15.     Since 1992, NPI has continuously and exclusively used in commerce its hourglass design trade dress in connection with a double socket arm product (the "RAM® Hourglass Mount").  On May 23, 2012, NPI filed an application with the PTO to register its hourglass design trade dress on the Principal Register.  On December 4, 2012, the PTO granted the application for the hourglass design trade dress and issued a registration certificate for U.S. Trademark Reg. No. 4,254,086 to NPI.  A true and correct copy of the registration certificate is attached hereto as **Exhibit B**.

16.     Since at least as early as March 13, 2013, NPI has continuously and exclusively used in commerce the Track Ball mark in commerce in association with its RAM® Products.

17.     By virtue of NPI's widespread and continuous use of NPI's Trademarks, including through the use, sale and promotion of goods bearing NPI's Trademarks, NPI has established extensive common law rights in NPI's Trademarks.

18.     NPI, through its extensive use, sale, and promotion of the goods provided under NPI's Trademarks, has developed valuable goodwill in NPI's Trademarks.

19.     As a result of NPI's innovative RAM® Products, their widespread use, and their popularity, NPI's Trademarks are famous and well known to consumers.

## DEFENDANT'S UNLAWFUL ACTIONS

### A.  Facts Relevant to YakAttack's Trademark Misbranding and Infringement

20.     Defendant YakAttack markets, distributes, and sells products for mounting smartphones, including on the websites https://www.yakattack.us/ and https://www.amazon.com.

21.     On or around March 2012, YakAttack approached NPI to request that NPI modify

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

1  its RAM® ball with the plastic threaded hole in order to replace the plastic threaded hole with a

2  metal threaded hole.

3      22.    NPI agreed to manufacture a RAM® ball with a metal threaded hole. NPI

4  informed YakAttack that the product would be offered to both NPI's and YakAttack's

5  customers, and that the parties would share the costs of modifying the manufacturing process and

6  equipment.

7      23.    On or around February 8, 2017, NPI informed YakAttack that YakAttack was

8  incorrectly using and/or omitting NPI's branding, trademarks, and/or patent markings in its

9  marketing materials for RAM® products. For example, YakAttack's marketing materials for the

10 RAM® Track Ball™ mislabels the product as YakAttack's Screwball product.



11 https://www.yakattack.us/SB1_12_p/sb1-12.htm.

23     24.    On information and belief, Defendant has been marketing, distributing, selling,

24 and otherwise passing off RAM® Products as its own, for example, by removing or otherwise

25 omitting reference to the Track Ball™ Trademark on marketing materials for RAM® Products

26 (collectively, the "Misbranded RAM® Track Ball™ Products"). The Misbranded RAM® Track

27 Ball™ Products include but are not limited to the 1" Screwball with YakAttack MightyBolt, 1.5"

28

COMPLAINT             - 6 -
Case No. 2:17-cv-00646

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1  Screwball with YakAttack MightyBolt, SUP Leash Plug Adapter with 1" Screwball, SUP Leash

2  Plug Adapter with 1.5" Screwball.

3       25.    On information and belief, Defendant has been marketing, distributing, selling,

4  and otherwise passing off RAM® Products as its own, for example, by removing or otherwise

5  omitting reference to the Hourglass Shape Registered Trademark on marketing materials for

6  RAM® Products (collectively, the "Misbranded RAM® Hourglass Shape Products").  The

7  Misbranded RAM® Hourglass Shape Products include but are not limited to the PanFish Camera

8  Mount, GearTrac Ready; PanFish Camera Mount, GoPro® Ready; PanFish Camera Mount,

9  GoPro® Ready and Includes MighyMount; PanFish Camera Mount, Includes MighyMount;

10 PanFish Portrait Camera Mount; PanFish Portrait Camera Mount, GoPro® Ready; PanFish

11 Portrait Camera Mount, GoPro® Ready and Includes Mighty Mount; PanFish Portrait Camera

12 Mount, Includes MightyMount; PanFish Portrait Combo; and DogBone Camera Mount, Base

13 Not Included.

14       26.    On information and belief, Defendant has been has been marketing, distributing,

15 selling, and otherwise passing off RAM® Products as its own, for example, by removing or

16 otherwise omitting reference to the RAM® Trademark on marketing materials for RAM®

17 Products (collectively, the "Misbranded RAM® Products).  The Misbranded RAM® Products

18 include but are not limited to the 1" Screwball with YakAttack MightyBolt, 1.5" Screwball with

19 YakAttack MightyBolt, SUP Leash Plug Adapter with 1" Screwball, SUP Leash Plug Adapter

20 with 1.5" Screwball; PanFish Camera Mount, GearTrac Ready; PanFish Camera Mount, GoPro®

21 Ready; PanFish Camera Mount, GoPro® Ready and Includes MighyMount; PanFish Camera

22 Mount, Includes MighyMount; PanFish Portrait Camera Mount; PanFish Portrait Camera Mount,

23 GoPro® Ready; PanFish Portrait Camera Mount, GoPro® Ready and Includes Mighty Mount;

24 PanFish Portrait Camera Mount, Includes MightyMount; PanFish Portrait Combo; and DogBone

25 Camera Mount, Base Not Included; Zooka Tube W Plunger Deck Mount; PanFish Portrait /

26 DogBone Combo; Articulating Mounting Kit; Zooka Tube; DogBone Camera Mount; Camera

27 Ball; and Screwball.

28

COMPLAINT                              - 7 -
Case No. 2:17-cv-00646

27.     On information and belief, Defendant sells the Misbranded RAM® Track Ball™

Products, the Misbranded RAM® Hourglass Shape Products, and the Misbranded RAM®

Products, from its websites to consumers throughout the United States, including in this district

and the State of Washington.

**B. Facts Relevant to Declaratory Relief Under Contract Law**

28.     There is an actual controversy arising under contract and within the jurisdiction of

this Court under 28 U.S.C. §§ 2201 and 2202.

29.     On information and belief, on or around 2013, Defendant and NPI made an

informal and oral business arrangement, without specific terms concerning duration or

termination, under which NPI agreed to supply a particular RAM® product (now the RAM®

Track Ball™) exclusively to Defendant within the kayak and paddle sports market.  At the time

that business arrangement was made, Defendant was not manufacturing kayaks.

30.     On information and belief, on or before November 10, 2016, Defendant

announced a material change to its business, namely that it would be manufacturing kayaks and

selling them under Defendant's own brand.  This development materially changed the

circumstances of NPI's supply to Defendant, because NPI has and maintains numerous

relationships with other companies in the paddle sports industry, which are not consistent with or

conducive to exclusive supply to Defendant.

31.     On February 8, 2017, counsel for NPI sent Defendant a letter via Federal Express

and email (the "*February 2017 Letter*") which stated, *inter alia*, that "[i]n light of the fact that

[Defendant] will soon be launching its own line of kayaks, NPI finds it necessary to expand its

distribution channels to other paddle sports equipment outlets in order to avoid conflict of

interest or possible brand or supply chain confusion."

32.     The February 2017 Letter also stated that NPI "recently discovered numerous

instances throughout [Defendant]'s website and Product Catalog where NPI's branding,

trademarks, and/or patent markings are not being used correctly or, in some instances, are not

shown at all. These misuses create the impression that [Defendant] is the original source of NPI's

COMPLAINT                                      - 8 -
Case No. 2:17-cv-00646

1   products, potentially weakening NPI's intellectual property rights."

2       33.     The February 2017 Letter provided numerous examples and "guidelines" for

3   Defendant to follow to properly use NPI's marks in a way that will not confuse consumers.

4       34.     On or around February 8, 2017, Defendant and NPI reached an oral agreement

5   concerning the issues raised in the February 2017 Letter (the "***February 2017 Agreement***").

6       35.     On information and belief, under the February 2017 Agreement, Defendant

7   agreed to comply with the "guidelines" NPI provided to Defendant concerning NPI's marks.

8       36.     Also under the February 2017 Agreement, the parties agreed that NPI would no

9   longer be obligated to sell the RAM® Track Ball™ exclusively to Defendant within the kayak

10  and paddle sports market.

11      37.     Also under the February 2017 Agreement, the parties agreed that NPI would

12  reduce the agreement to writing for the parties to execute.

13      38.     On or about February 17, 2017, counsel for NPI sent a letter to Defendant

14  reducing the February 2017 Agreement to writing.  The letter agreement was signed by NPI's

15  President and CEO Jeff Carnevali.

16      39.     Defendant never returned to NPI a fully executed version of the February 17,

17  2017 letter agreement.

18      40.     On information and belief, Defendant does not intend to follow through with

19  execution of the February 17, 2017 letter agreement.  Defendant has failed to comply with the

20  terms of the February 2017 Agreement.

21      41.     On or about March 1, 2017 and March 22, 2017, Defendant submitted two

22  purchase orders to NPI for the purchase of NPI products, purchase order nos. 1702271 and

23  17032201.

24      42.     On or about March 2, 2017 and March 23, 2017, NPI sent automated "Order

25  Acknowledgement[s]" to Defendant.  NPI acknowledged YakAttack's purchase orders under the

26  belief that YakAttack would comply with the terms of the February 2017 Agreement and would

27  sign the February 17, 2017 letter memorializing that agreement.

28

COMPLAINT                        - 9 -                       FENWICK & WEST LLP
Case No. 2:17-cv-00646                                       1191 SECOND AVENUE, 10TH FLOOR
                                                             SEATTLE, WASHINGTON 98101
                                                             TELEPHONE 206.389.4510
                                                             FACSIMILE  206.389.4511

43.     On information and belief, Defendant retained counsel on or about March 2017.

44.     On March 14, 2017 and on March 22, 2017, counsel for NPI sent letters to Defendant to follow up on the February 17, 2017 letter agreement. The letters contained modified terms of the February 17, 2017 letter based on the parties' subsequent conversations and correspondence.

45.     On information and belief, Defendant does not intend to follow through with execution of the March 14 or March 22 letter agreements.

46.     On or about March 24, 2017, Defendant's counsel sent a letter to NPI's counsel requesting to discuss certain matters relating to "settlement." On information and belief, the parties' counsel subsequently engaged in such discussions.

47.     On or about April 18, 2017, NPI sent an email communication to Defendant indicating that NPI had cancelled Defendant's purchase order nos. 1702271 and 17032201 in light of the parties' inability to reach agreement on "material terms of the sale of NPI's products or use of NPI marks going forward[.]"

48.     On or about April 19, 2017, Defendant's counsel sent an email correspondence to NPI's counsel stating that "[w]e believe your clients actions constitute an unlawful interference with YakAttack's business, and we will take whatever actions are necessary if we do not immediately hear back from you that NPI will fulfill those orders and maintain the status quo until a mutually acceptable agreement is reached."

49.     Based on the foregoing, a justiciable controversy exists between NPI and Defendant as to whether NPI is obligated to fulfill purchase order nos. 1702271 and 17032201 despite the parties failed discussions concerning the terms of supply.

50.     In addition, based on the foregoing, justiciable controversy exists between NPI and Defendant as to whether or not NPI is required to supply the RAM® Track Ball™ exclusively to Defendant within the kayak and paddlesports market.

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

**FIRST CLAIM FOR RELIEF**
**(Federal Unfair Competition and False Designation of Origin**
**Under 15 U.S.C. § 1125(a)(1)(A))**

51.    NPI realleges and reincorporates the allegations in paragraphs 1–50 above.

52.    NPI's Trademarks are a designation of origin that identifies NPI as the exclusive source of RAM® Products, and distinguishes NPI's goods from the goods of others in the marketplace.

53.    Defendant's products are manufactured, offered, sponsored, authorized, licensed, and covered under NPI's lifetime warranty, of similar quality to, or otherwise connected or affiliated with NPI.

54.    In connection with the marketing, distribution and/or sale of the Misbranded RAM® Track Ball™ Products, Defendant uses the term "Screwball," and omits reference to NPI's Track Ball™ Trademark. Defendant's use of "Screwball" and its failure to reference NPI's Trademarks constitutes false designations of origin and reverse passing off because it misrepresents the Misbranded RAM® Track Ball™ Products as YakAttack products, and is likely to cause confusion or mistake, or to deceive consumers regarding the origin of the products.

55.    In connection with the marketing, distribution and/or sale of the Misbranded RAM® Hourglass Shape Products, Defendant omits reference to NPI's Hourglass Shape Design Trademark. Defendant's failure to reference NPI's Trademarks constitutes false designations of origin and reverse passing off because it misrepresents the Misbranded RAM® Hourglass Shape Products as YakAttack products, and is likely to cause confusion or mistake, or to deceive consumers regarding the origin of the products. Such false designation of origin constitutes unfair competition and reverse passing off in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56.    In connection with the marketing, distribution and/or sale of the Misbranded RAM® Products, Defendant omits reference to NPI's RAM® Trademark and uses other terms or marks, including but not limited to YakAttack, Panfish, Zooka Tube and/or DogBone.

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

1 Defendant's use of other terms or marks, and its failure to reference NPI's Trademarks

2 constitutes false designations of origin and reverse passing off because it misrepresents the

3 Misbranded RAM® Products as YakAttack products, and is likely to cause confusion or mistake,

4 or to deceive consumers regarding the origin of the products.  Such false designation of origin

5 constitutes unfair competition and reverse passing off in violation of Section 43(a) of the

6 Lanham Act, 15 U.S.C. § 1125(a).

7        57.    Prior to Defendant's adoption and use of NPI's Trademarks, Defendant either had

8 actual notice and knowledge of NPI's Trademarks, or had constructive notice of NPI's

9 Trademarks by the PTO's placement of NPI's Trademarks on the Principal Register and NPI's

10 notice of ® with NPI's Trademarks on NPI's website and other marketing materials.

11       58.    On information and belief, Defendant's acts are deliberate and intended to

12 confuse the public as to the source of the Misbranded RAM® Track Ball™ Products, Misbranded

13 RAM® Hourglass Shape Products, and Misbranded RAM® Products, to injure NPI, and to reap

14 the benefits of NPI's goodwill.

15       59.    As a direct and proximate result of Defendant's willful and unlawful conduct,

16 Defendant has damaged and will continue to damage NPI's business, market, reputation, and

17 goodwill, and may discourage current and potential customers from dealing with NPI.  Such

18 irreparable damage will continue unless Defendant are enjoined from passing off NPI's products

19 as its own.

20       60.    Defendant's acts have damaged and will continue to damage NPI, and NPI has no

21 adequate remedy at law.

22       61.    In light of the foregoing, NPI is entitled to injunctive relief prohibiting Defendant

23 from using NPI's Trademarks, or any trademark or trade dress confusingly similar thereto, for

24 any purpose, and to recover from Defendant all damages that NPI has sustained and will sustain

25 as a result of such infringing acts, and all gains, profits and advantages obtained by NPI as a

26 result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15

27 U.S.C. § 1117(a) and attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b).

28

COMPLAINT                          - 12 -
Case No. 2:17-cv-00646

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE  206.389.4510
FACSIMILE  206.389.4511

62.     Pursuant to 15 U.S.C. § 1118, NPI also asks the Court for an order forcing Defendant to deliver up for destruction all products, labels, signs, prints, advertisements, and other articles in Defendant's possession that infringe upon NPI's rights.

### SECOND CLAIM FOR RELIEF
**(Federal False Advertising under 15 U.S.C. § 1125(a)(1)(B))**

63.     NPI realleges and reincorporates the allegations in paragraphs 1–62 above.

64.     Defendant's commercial advertising and promotion, including for example, product description webpages and videos on Defendant's websites, feature the Misbranded RAM® Track Ball™ Products, the Misbranded RAM® Hourglass Shape Products, and the Misbranded RAM® Products.

65.     The omission of NPI's Track Ball™ Trademark on the Misbranded RAM® Track Ball™ Products actually deceived or has the tendency to deceive a substantial segment of the advertising audience by misrepresenting the nature, characteristics, qualities, and geographic origin of the Misbranded RAM® Track Ball™ Products.  For example, such modifications misrepresent the manufacturing source and origin of the Misbranded RAM® Track Ball™ Products by implying that they were not manufactured by RAM® and/or that the products were manufactured by YakAttack.

66.     The omission of NPI's RAM® Hourglass Shape Design Trademark on the Misbranded RAM® Hourglass Shape Products actually deceived or has the tendency to deceive a substantial segment of the advertising audience by misrepresenting the nature, characteristics, qualities, and geographic origin of the Misbranded RAM® Hourglass Shape Products.  For example, such modifications misrepresent the manufacturing source and origin of the Misbranded RAM® Hourglass Shape Products by implying that they were not manufactured by RAM® and/or that the products were manufactured by YakAttack.

67.     The omission of NPI's RAM® Trademark on the Misbranded RAM® Products, actually deceived or has the tendency to deceive a substantial segment of the advertising audience by misrepresenting the nature, characteristics, qualities, and geographic origin of the

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

1  Misbranded RAM® Products. For example, such modifications misrepresent the manufacturing

2  source and origin of the Misbranded RAM® Products by implying that they were not

3  manufactured by RAM® and/or that the products were manufactured by YakAttack.

4      68.    Defendant features the Misbranded RAM® Track Ball™ Products, the

5  Misbranded RAM® Hourglass Shape Products, and the Misbranded RAM® Products in its

6  commercial advertising and promotion knowing that the products are manufactured by NPI and

7  not by the Defendant. YakAttack previously purchased the Misbranded RAM® Track Ball™

8  Products, the Misbranded RAM® Hourglass Shape Products, and the Misbranded RAM®

9  Products directly from NPI, and thus knows that the products are manufactured by NPI and not

10 by the Defendant. Furthermore, the YakAttack website includes photographs of RAM® Products

11 engraved with the RAM® trademark, the PTO has placed NPI's Trademarks on the Principal

12 Register, and NPI's website and other marketing materials indicate that it manufactures the

13 RAM® Products.

14     69.    Defendant's commercial advertising and promotion have featured and continue to

15 feature the Misbranded RAM® Track Ball™ Products, the Misbranded RAM® Hourglass Shape

16 Products, and the Misbranded RAM® Products.

17     70.    The false representations caused by Defendant's conduct are likely to influence

18 purchasing decisions.

19     71.    Such false representations constitute unfair competition and false advertising in

20 violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

21     72.    On information and belief, Defendant's acts are deliberate and intended to deceive

22 consumers of the Misbranded RAM® Track Ball™ Products, the Misbranded RAM® Hourglass

23 Shape Products, and the Misbranded RAM® Products, to injure NPI, and to reap the benefits of

24 and profit from NPI's goodwill.

25     73.    As a direct and proximate result of Defendant's willful and unlawful conduct,

26 Defendant has damaged and will continue to damage NPI's business, market, reputation, and

27 goodwill, and may discourage current and potential customers from dealing with NPI. Such

28

1  irreparable damage will continue unless Defendant are enjoined from falsely advertising in

2  connection with the Misbranded RAM® Track Ball™ Products, the Misbranded RAM®

3  Hourglass Shape Products, and the Misbranded RAM® Products.

4      74.    Defendant's acts have damaged and will continue to damage NPI, and NPI has no

5  adequate remedy at law.

6      75.    In light of the foregoing, NPI is entitled to injunctive relief prohibiting Defendant

7  from falsely advertising in connection with the Misbranded RAM® Track Ball™ Products, the

8  Misbranded RAM® Hourglass Shape Products, and the Misbranded RAM® Products for any

9  purpose, and to recover from Defendant all damages that NPI has sustained and will sustain as a

10  result of such infringing acts, and all gains, profits and advantages obtained by NPI as a result

11  thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. §

12  1117(a) and attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b).

13      76.    Pursuant to 15 U.S.C. § 1118, NPI also asks the Court for an order forcing

14  Defendant to deliver up for destruction all products, labels, signs, prints, advertisements, and

15  other articles in Defendant's possession that infringe upon NPI's rights.

16                        **THIRD CLAIM FOR RELIEF**
                  **(Unfair Business Practices — RCW 19.86 *et seq.*)**
17

18      77.    NPI realleges and reincorporates the allegations in paragraphs 1–76 above.

19      78.    Defendant's use of NPI's Trademarks to promote, market, or sell products in

20  Washington constitutes an unfair business practice pursuant to RCW 19.86 *et seq.*  Defendant's

   use of NPI's Trademarks is an unfair or deceptive practice occurring in trade or commerce that
21
   impacts the public interest and has caused injury to NPI.
22
       79.    Defendant's removal and/or replacement of NPI's Trademarks on products that it
23
   promotes, markets, or sells products in Washington constitutes an unfair business practice
24
   pursuant to RCW 19.86 *et seq.*  Defendant's removal and/or replacement of NPI's Trademarks is
25
   an unfair or deceptive practice occurring in trade or commerce that impacts the public interest
26
   and has caused injury to NPI.
27

28
FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

80.     Defendant's commercial advertising and promotion featuring the Misbranded RAM® Track Ball™ Products, the Misbranded RAM® Hourglass Shape Products, and the Misbranded RAM® Products in Washington is false and misleading, and constitutes an unfair business practice pursuant to RCW 19.86 *et seq.* Defendant's false and misleading commercial advertising and promotion is an unfair or deceptive practice occurring in trade or commerce that impacts the public interest and has caused injury to NPI.

81.     Defendant's actions violate RCW 19.86 *et seq.*

### FOURTH CLAIM FOR RELIEF
### (Washington Common Law Unfair Competition)

82.     NPI realleges and reincorporates the allegations in paragraphs 1–81 above.

83.     Defendant's use of NPI's Trademarks has infringed on its distinctive features in a manner that tends to confuse, in the public mind, NPI's products and/or advertising with the products and/or advertising of others.

84.     Defendant's removal and/or replacement of NPI's Trademarks constitutes reverse passing off and has a tendency to confuse, in the public mind, NPI's products and/or advertising with the products and/or advertising of others.

85.     Defendant's commercial advertising and promotion, featuring the Misbranded RAM® Track Ball™ Products, the Misbranded RAM® Hourglass Shape Products, and the Misbranded RAM® Products, in Washington is false and misleading.

86.     The acts of Defendant complained of herein constitute unfair competition in violation of Washington common law.

### FIFTH CLAIM FOR RELIEF
### (Washington Common Law Unjust Enrichment)

87.     NPI realleges and reincorporates the allegations in paragraphs 1–86 above.

88.     The acts of Defendant complained of herein constitute unjust enrichment of Defendant at NPI's expense in violation of Washington common law.

COMPLAINT                              - 16 -
Case No. 2:17-cv-00646

1

2

### SIXTH CLAIM FOR RELIEF
### (Breach of Contract)

89.     NPI realleges and reincorporates that allegations in paragraphs 1-88 above.

3

4

90.     Defendant breached the February 2017 Agreement by, *inter alia*, failing to

comply with the guidelines NPI provided to Defendant concerning NPI's marks and failing to

5

6

sign the letter dated February 17, 2017 that memorialized the terms of the February 2017

Agreement.

7

8

91.     As a direct and proximate result of Defendant's breach of the February 2017

Agreement, Defendant has damaged and will continue to damage NPI's business, market,

9

10

reputation, and goodwill, and may discourage current and potential customers from dealing with

NPI. Such irreparable damage will continue unless Defendant are enjoined from infringing

11

12

NPI's Trademarks.

### SEVENTH CLAIM FOR RELIEF

13

### (Declaratory Relief Regarding Termination of the Exclusivity Arrangement)

14

92.     NPI realleges and reincorporates that allegations in paragraphs 1-91 above.

15

93.     As a result of the acts described in the preceding paragraphs, there exists a

16

controversy of sufficient immediacy and reality to warrant the issuance of a declaratory

17

judgment that the informal oral arrangement between Defendant and NPI regarding the exclusive

18

supply of the RAM® Track Ball™ to Defendant within the paddle sports industry ended or

19

became terminated (i) upon NPI's notice to Defendant on February 8, 2017 that Defendant's

20

imminent launch of its own line of kayaks necessitated a non-exclusive arrangement in view of

21

NPI's relationship with other companies in the paddle sports industry, or (ii) upon Defendant's

22

oral agreement communicated to NPI that NPI would not be required to supply the RAM® Track

23

Ball™ exclusively to Defendant.

24

### EIGHTH CLAIM FOR RELIEF

25

### (Declaratory Relief Regarding Purchase Order Nos. 1702271 and 17032201)

26

94.     NPI realleges and reincorporates that allegations in paragraphs 1-93 above.

27

95.     As a result of the acts described in the preceding paragraphs, there exists a

28

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

1   controversy of sufficient immediacy and reality to warrant the issuance of a declaratory

2   judgment that NPI is not required to fulfill purchase order nos. 1702271 and 17032201 because

3   no contract was ever formed with respect to those purchase orders.  NPI was misled into

4   acknowledging YakAttack's purchase orders by YakAttack's oral agreement to comply with

5   NPI's guidelines regarding use of NPI's trademarks and its representation that it would execute

6   and comply with the February 17, 2017 letter agreement.  As such, there was never a "meeting of

7   the minds" in light of, *inter alia*, the ongoing discussions between the parties regarding

8   Defendant's sale of NPI products and use of NPI's marks.  Further, to the extent a contract was

9   formed with respect to those purchase orders, YakAttack breached and/or repudiated that

10  contract.

11                              **PRAYER FOR RELIEF**

12  WHEREFORE, NPI respectfully requests that the Court enter judgment against Defendant as

13  follows:

14          a.       That the Court issue preliminary and permanent injunctive relief against

15  Defendant, and that Defendant, its officers, agents, representatives, servants, employees,

16  attorneys, successors and assignees, and all others in active concert or participation with

17  Defendant, be enjoined and restrained from offering for sale, marketing, or selling any product

18  which includes NPI's trademarks or any confusingly similar variation thereof;

19          b.       That the Court issue preliminary and permanent injunctive relief against

20  Defendant, and that Defendant, its officers, agents, representatives, servants, employees,

21  attorneys, successors and assignees, and all others in active concert or participation with

22  Defendant, be enjoined and restrained from misrepresenting the nature, characteristics, qualities,

23  or origin of the RAM® Products sold by Defendant;

24          c.       That the Court find Defendant's acts complained of herein unlawful as

25  constituting unfair competition, false designation of origin, trademark infringement, false

26  advertising, and unjust enrichment under the causes of action asserted in this Complaint;

27          d.       That the Court require that Defendant deliver up for destruction all products,

28
COMPLAINT                          - 18 -                    FENWICK & WEST LLP
Case No. 2:17-cv-00646                                       1191 SECOND AVENUE, 10TH FLOOR
                                                             SEATTLE, WASHINGTON 98101
                                                             TELEPHONE 206.389.4510
                                                             FACSIMILE  206.389.4511

1  labels, signs, prints, advertisements, and other articles that infringe NPI's statutory and common

2  law trademark rights, or are a result of any false designation of origin, false advertising, or unfair

3  competition by Defendant;

4         e.      That the Court order an accounting of all gains, profits, and advantages derived

5  from Defendant's wrongful acts;

6         f.      That the Court award NPI all gains, profits, and advantages derived by Defendant

7  from its unlawful acts;

8         g.     That the Court award NPI such damages as NPI has sustained as a consequence of

9  Defendant's breach of the February 2017 Agreement;

10         h.     That the Court award NPI all damages caused by Defendant's unlawful acts;

11         i.      That the Court award NPI treble damages as provided by law;

12         j.      That the Court award NPI its attorneys' fees and costs incurred herein, including

13  prejudgment and post-judgment interest;

14         k.     That the Court find that NPI is not required to supply the RAM® Track Ball™ to

15  Defendant on an exclusive basis within the paddlesports industry;

16         l.      That the Court find that NPI is not required to fill purchase order nos. 1702271

17  and 17032201; and

18         m.    That the Court grant NPI all other relief to which it is entitled and such other or

19  additional relief as is just and proper.

20  ## DEMAND FOR JURY TRIAL

21      NPI hereby demands a trial by jury of all issues so triable.

22

23

24

25

26

27

28

COMPLAINT
Case No. 2:17-cv-00646

- 19 -

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

1    NATIONAL PRODUCTS INC.

2    By its attorneys,

3    Dated:   April 24, 2017          FENWICK & WEST LLP

4
                                      By: s/*David K. Tellekson*
5                                         David K. Tellekson (WSBA No. 33523)
                                          Jessica M. Kaempf (WSBA No. 51666)
6                                         1191 Second Avenue, 10th Floor
                                          Seattle, WA 98101
7                                         Telephone:   206.389.4510
                                          Facsimile:   206.389.4511
8                                         Email:       dtellekson@fenwick.com
                                                       jkaempf@fenwick.com
9
                                      *Attorneys for Plaintiff*
10                                    *National Products Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     COMPLAINT                        - 20 -                    FENWICK & WEST LLP
     Case No. 2:17-cv-00646                                   1191 SECOND AVENUE, 10TH FLOOR
                                                               SEATTLE, WASHINGTON 98101
                                                               TELEPHONE 206.389.4510
                                                               FACSIMILE  206.389.4511

# EXHIBIT A

Int. Cls.: 6 and 20

Prior U.S. Cls.: 2, 12, 13, 14, 22, 23, 25, 32 and 50

**United States Patent and Trademark Office**

Reg. No. 2,629,952
Registered Oct. 8, 2002

## TRADEMARK
### PRINCIPAL REGISTER

## RAM

NATIONAL PRODUCTS, INC. (WASHINGTON CORPORATION)
1017 SOUTH ELMGROVE STREET
SEATTLE, WA 98108

FOR: UNIVERSAL MOUNTING LINKAGES COMPRISING A BASE AND GASKET, A BALL AND ARM WITH SOCKET, BOLTS, SPRINGS, WASHERS AND THREADED TIGHTENING KNOB, MADE PRIMARILY OF METAL, TO BE USED WITH A VARIETY OF CUSTOM COMPONENTS TO MOUNT A WIDE VARIETY OF ITEMS FROM ELECTRONIC DEVICES TO FISHING ROD HOLDERS, IN CLASS 6 (U.S. CLS. 2, 12, 13, 14, 23, 25 AND 50).

FIRST USE 4-1-1995; IN COMMERCE 4-1-1995.

FOR: UNIVERSAL MOUNTING LINKAGES COMPRISING A BASE AND GASKET, A BALL AND ARM WITH SOCKET, BOLTS, SPRINGS, WASHERS AND THREADED TIGHTENING KNOB, MADE PRIMARILY OF NON-METAL, TO BE USED WITH A VARIETY OF CUSTOM COMPONENTS TO MOUNT A WIDE VARIETY OF ITEMS FROM ELECTRONIC DEVICES TO FISHING ROD HOLDERS, IN CLASS 20 (U.S. CLS. 2, 13, 22, 25, 32 AND 50).

FIRST USE 4-1-1995; IN COMMERCE 4-1-1995.

OWNER OF U.S. REG. NOS. 2,322,906 AND 2,349,277.

SER. NO. 76-045,715, FILED 5-8-2000.

MARY BOAGNI, EXAMINING ATTORNEY

# EXHIBIT B

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,254,086**

**Registered Dec. 4, 2012**

**Int. Cls.: 6 and 12**

**TRADEMARK**

**PRINCIPAL REGISTER**

NATIONAL PRODUCTS, INC. (WASHINGTON CORPORATION)
8410 DALLAS AVE. S
SEATTLE, WA 98108

FOR: METAL UNIVERSAL MOUNTS COMPRISING A BASE, ARMS WITH SOCKETS, BALLS, BOLTS AND TIGHTENERS, TO BE USED WITH A VARIETY OF CUSTOM COMPONENTS TO MOUNT A WIDE VARIETY OF ITEMS, NAMELY, ELECTRONIC DEVICES AND SPORTING EQUIPMENT, PARTS FOR THE AFOREMENTIONED GOODS, NAMELY, DOUBLE-SOCKET METAL MOUNT ARMS, IN CLASS 6 (U.S. CLS. 2, 12, 13, 14, 23, 25 AND 50).

FIRST USE 0-0-1992; IN COMMERCE 0-0-1992.

FOR: MOUNTS FOR ELECTRONIC DEVICES AND SPORTING EQUIPMENT SPECIALLY ADAPTED FOR USE IN VEHICLES, IN CLASS 12 (U.S. CLS. 19, 21, 23, 31, 35 AND 44).

FIRST USE 0-0-1992; IN COMMERCE 0-0-1992.

THE MARK CONSISTS OF A THREE-DIMENSIONAL CONFIGURATION OF A DOUBLE-SOCKET MOUNT ARM THAT IS TAPERED IN THE MIDDLE LIKE AN HOURGLASS. THE DOTTED LINES OUTLINING THE ENDS OF THE MOUNT AND THE ADJUSTMENT KNOB INDICATE PLACEMENT OF THE MARK ON THE GOODS AND ARE NOT PART OF THE MARK.

SEC. 2(F).

SER. NO. 85-632,977, FILED 5-23-2012.

ELIZABETH KAJUBI, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date). The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at http://www.uspto.gov.**

AO 120 (Rev. 08/10)

| TO: Mail Stop 8 Director of the U.S. Patent and Trademark Office P.O. Box 1450 Alexandria, VA 22313-1450 | REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court ___for the Western District of Washington___ on the following

☑ Trademarks or   ☐ Patents.   ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. 2:17-cv-00646 | DATE FILED 4/24/2017 | U.S. DISTRICT COURT for the Western District of Washington |
|---|---|---|
| PLAINTIFF NATIONAL PRODUCTS INC. | | DEFENDANT YAKATTACK LLC |

| | PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 2,629,952 | 10/8/2002 | National Products Inc. |
| 2 | 4,254,086 | 12/4/2012 | National Products Inc. |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY ☐ Amendment   ☐ Answer   ☐ Cross Bill   ☐ Other Pleading | |
|---|---|---|
| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9    NATIONAL PRODUCTS INC.,                    Case No. 2:17-cv-00646

10                   Plaintiff,

11           v.                                  **NATIONAL PRODUCTS INC.'S
                                                 CORPORATE DISCLOSURE STATEMENT**
12    YAKATTACK LLC,

13                   Defendant.                  **JURY TRIAL DEMANDED**

14

15           Pursuant to Federal Rule of Civil Procedure 7.1(b)(1), National Products, Inc. ("NPI")

16    states that NPI is a privately held company, that NPI has no parent corporations, and that no

17    publicly held company owns 10% or more of NPI.

18    ///

19

20    ///

21    ///

22    ///

23

24    ///

25    ///

26

27

28

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE 206.389.4511

1

NATIONAL PRODUCTS INC.

2

By its attorneys,

3   Dated:    April 24, 2017

FENWICK & WEST LLP

4

5   By: s/*David K. Tellekson*
        David K. Tellekson (WSBA No. 33523)
        Jessica M. Kaempf (WSBA No. 51666)

6       1191 Second Avenue, 10th Floor
        Seattle, WA 98101

7       Telephone:    206.389.4510
        Facsimile:    206.389.4511

8       Email:        dtellekson@fenwick.com
                      jkaempf@fenwick.com

9

*Attorneys for Plaintiff*

10  *National Products Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL PRODUCTS INC., | Case No. 2:17-cv-00646-TSZ |
|       Plaintiff, | |
| | **NOTICE OF APPEARANCE OF** |
|       v. | **JESSICA M. KAEMPF** |
| YAKATTACK LLC, | |
| | **JURY TRIAL DEMANDED** |
|       Defendant. | |

TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Plaintiff National Products Inc. ("Plaintiff") files this Notice of Appearance and hereby notifies the Court that Jessica M. Kaempf, of the law firm of Fenwick & West LLP, is hereby appearing as counsel for Plaintiff in the above-referenced matter.  Ms. Kaempf's email addresses, for purposes of receipt of Notices of Electronic Filing, are: jkaempf@fenwick.com and smcphee@fenwick.com.  For other purposes, contact information for counsel is set forth below.  Plaintiff requests that Ms. Kaempf be included on the Court's and parties' services lists.

/ / /

/ / /

/ / /

/ / /

/ / /

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

1    Dated:  April 25, 2017

Respectfully submitted,

2

FENWICK & WEST LLP

3

4

By: *s/Jessica M. Kaempf*
     Jessica M. Kaempf, WSBA No. 51666
     1191 Second Avenue, 10th Floor
5      Seattle, WA  98101
     Telephone:   206.389.4510
6      Facsimile:   206.389.4511
     Email:       kaempf@fenwick.com

7

8      *Attorneys for Plaintiff*
     *National Products Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAEMPF NOTICE OF APPEARANCE      - 2 -
Case No. 2:16-cv-00402-TSZ

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
TELEPHONE 206.389.4510
FACSIMILE  206.389.4511

# Exhibit C

**From:** Jeff Carnevali [mailto:jeffc@rammount.com]
**Sent:** Monday, February 06, 2012 11:54 AM
**To:** Luther Cifers
**Cc:** Chad Remmers
**Subject:** RE: Questions

I'll answer below

---

**From:** Luther Cifers [mailto:luther@yakattack.us]
**Sent:** Monday, February 06, 2012 8:44 AM
**To:** Jeff Carnevali
**Cc:** Chad Remmers
**Subject:** RE: Questions

Sounds great! We can order several hundred at a time, and are willing to will pay the setup charge if the quantities are not high enough. I'll get a drawing over to Chad and we can start the quoting process. Would we be able to have that as an exclusive part for us?  Yes, if you pay for the tooling change, then that part is exclusive to you.  Send the drawing to me and I'll work you up a cost for the tooling revision.

Aaron is getting me pricing on the Tough-Ball. With it, folks can remove the t-bolt in the bottom of any of our track mount accessories and quickly convert the accessory to a RAM mounted product. We've already been offering an as-needed solution by gluing a stud into a Screwball but the Tough-Ball will provide a good commercial solution. I'm assuming the stud is Stainless Steel?  Chad is your guy for pricing on the Tough Ball, Aaron is VP of Marketing at the present time and is travelling quite a bit so there could be a delay in his response time.  Yes, the stud is stainless steel, unless you want it out of any other type of material.  We over-mold machine screws and or bolts into the plastic so the size, length and type of thread has variables based on our customer requirements.

Thanks!

**Luther Cifers**
YakAttack LLC | P.O. Box 147 | Farmville | VA | 23901
t: 434.392.3233 | m: 804.370.3724 | luther@yakattack.us
www.yakattack.us

Kayak Fishing Accessories for Kayak Fishermen, By Kayak Fishermen. ™

---

**From:** Jeff Carnevali [mailto:jeffc@rammount.com]
**Sent:** Monday, February 06, 2012 11:37 AM
**To:** Luther Cifers
**Cc:** Chad Remmers
**Subject:** RE: Questions

Luther,

The material is either a glass filled PC or an ABS/PC and a simple dust mask should be all that's required.

As for a custom core for the hole, that wouldn't be a problem.  Depending on the hole size, the tooling cost is minimal and the production run is either 8 hours of production time or a $150 mold set up fee, whatever you choose.  Chad would be able to work up the costs for this part for you.

Have you seen this new ball system, it's right up your alley:
http://www.ram-mount.com/NewProducts/ramtoughball/tabid/4092/Default.aspx#/

Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com

---------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your co-operation.

---------------------------------------------------------------------

**From:** Luther Cifers [mailto:luther@yakattack.us]
**Sent:** Monday, February 06, 2012 8:28 AM
**To:** Jeff Carnevali
**Subject:** Questions

Hi Jeff,

I have a couple of questions and I assumed since they were technical in nature you'd be the guy to ask, at least for the first one.

1) We currently ream the center hole in the 1.5" pin lock ball so we can press in a threaded insert for our Screwball. We use normal precautions for the dust created (dust mask). I don't know the material, but are any special precautions required or recommended?

2) Would you be willing to quote a custom core for the 1.5" pin lock ball (RPR-351-WBC-F) so that it already has the right counterbore for our inserts rather than us drilling it? If so, I would need the following info:
- Estimated cost for tooling and per-piece price
- Lead time
- Order minimums / qty breaks
- Would this part be exclusive to YakAttack?

2

Sales of our products, including those that use RAM components, are increasing very rapidly. I expect we will drastically increase our business with RAM this year.

Thanks!

**Luther Cifers**
YakAttack LLC | P.O. Box 147 | Farmville | VA | 23901
t: 434.392.3233 | m: 804.370.3724 | luther@yakattack.us
www.yakattack.us

Kayak Fishing Accessories for Kayak Fishermen, By Kayak Fishermen. ™

# Exhibit D

-----Original Message-----

From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Wednesday, March 21, 2012 1:43 PM
To: Luther Cifers
Subject: RE: Brass Inserts

Luther,

Now that answer was much easier, you're welcome and thank you too!

You can trust me that I won't take anything away from your efforts...

Good luck and enjoy the journey.

Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com


----------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your co-operation.

----------------------------------------------------------------------


-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Wednesday, March 21, 2012 10:36 AM
To: Jeff Carnevali
Cc: Chad Remmers; Cliff Lucas
Subject: RE: Brass Inserts

Sounds good on splitting cost.

Thanks.

-----Original Message-----
From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Wednesday, March 21, 2012 12:31 PM
To: Luther Cifers
Cc: Chad Remmers; Cliff Lucas
Subject: RE: Brass Inserts


Chad will provide new part numbers for both the C & B size balls with the new brass threaded inserts.

I will make you a proposition, why don't we split the tooling cost and we will both offer this to our customers? I will then investigate having the inserts made in mass production, this way you wouldn't have any set up fees, etc.

Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com


----------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your co-operation.

----------------------------------------------------------------------

-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Wednesday, March 21, 2012 9:07 AM
To: Jeff Carnevali
Cc: Chad Remmers; Cliff Lucas
Subject: RE: Brass Inserts

OK - will we have a new part number for those parts or should I order by old part number and specify inserts to be molded in?

I'm trying to get inserts on the way today but if they don't make it in time we can make the min run, pay a setup fee, or wait for the next run to switch over to the insert molded part.

Thanks.

Luther Cifers
YakAttack LLC | P.O. Box 147 | Farmville | VA | 23901
t: 434.392.3233 | m: 804.370.3724 | luther@yakattack.us www.yakattack.us

Kayak Fishing Accessories for Kayak Fishermen, By Kayak Fishermen. T

-----Original Message-----
From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Wednesday, March 21, 2012 11:04 AM
To: Luther Cifers
Cc: Chad Remmers; Cliff Lucas
Subject: RE: Brass Inserts

Luther,

Make certain you place an order in advance for the RAM bases with the threaded inserts, that way they will be scheduled accordingly with the mold.
I will CC Chad and Cliff so they are in the loop and will process accordingly.

There are 2 ball sizes, let us know how many of each you want.

Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com

------------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your co-operation.

------------------------------------------------------------------------

-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Wednesday, March 21, 2012 5:03 AM
To: Jeff Carnevali
Subject: RE: Brass Inserts

Gotcha. I'm planning to place a 5K pc order today with Yardley. We're going with the 25020SR12-9BR (the one I sent the drawing of), correct?

Thanks.

Luther Cifers
YakAttack LLC | P.O. Box 147 | Farmville | VA | 23901
t: 434.392.3233 | m: 804.370.3724 | luther@yakattack.us www.yakattack.us

Kayak Fishing Accessories for Kayak Fishermen, By Kayak Fishermen. T


-----Original Message-----
From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Tuesday, March 20, 2012 4:04 PM
To: Luther Cifers
Subject: RE: Brass Inserts

We purchase 500,000 per order and they are made in Taiwan.

Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com


---------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your co-operation.

-----------------------------------------------------------------------


-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Tuesday, March 20, 2012 1:02 PM
To: Jeff Carnevali
Subject: RE: Brass Inserts

We will be paying around $.18 each. They are made in the USA. If your supplier is domestic I'd be interested in
looking into it.

We also have a much larger insert we'll be making soon for a screw-together push pole. That one is going to be
pricey. Yardley is going to quote it but I'd be interested in looking at other domestic vendors for that one as
well.

Thanks.

Luther Cifers
YakAttack LLC | P.O. Box 147 | Farmville | VA | 23901
t: 434.392.3233 | m: 804.370.3724 | luther@yakattack.us www.yakattack.us

Kayak Fishing Accessories for Kayak Fishermen, By Kayak Fishermen. T


-----Original Message-----
From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Tuesday, March 20, 2012 10:31 AM
To: Luther Cifers
Subject: RE: Brass Inserts

We purchase our 1/4"-20 brass threaded inserts for $0.069 each.  We could order your inserts at the same time
we order ours and get a pretty good price.  We place orders approx. once to twice per year.


Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com


-----------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your co-operation.

---------------------------------------------------------------------

-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Tuesday, March 20, 2012 6:20 AM
To: Jeff Carnevali
Subject: RE: Brass Inserts

Tolerances are in the box to the left of the dimensions.

Thanks.

-----Original Message-----
From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Monday, March 19, 2012 10:40 PM
To: Luther Cifers
Subject: RE: Brass Inserts

10-4, we'll help where we can.


Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com


---------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this

e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your co-operation.

-----------------------------------------------------------------------

-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Monday, March 19, 2012 6:43 PM
To: Jeff Carnevali
Subject: RE: Brass Inserts

OK sounds good I just sent the supplier an email. Hopefully they will send you samples tomorrow.

I'm looking forward to getting these parts. In the meantime we'll continue to order the standard ball. These Screwballs are on really moving now. Once we get our distributor order we're going to cover the market with RAM products on GearTracs!

Sometime when I come up for air I'll put a box together with some product samples and send it to you. I think this GearTrac / Screwball concept has real teeth, especially once we tool up that little locking device. We're in the process of tooling another track now that is lighter weight, less expensive, and that we can mount with external clamps instead of having to machine holes in. That will get the cost down and make it very attractive for things like wall mounting or putting in a utility vehicle. The potential for this combination is enormous.

It's truly a privilege to be working with you guys.

-----Original Message-----
From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Monday, March 19, 2012 8:39 PM
To: Luther Cifers
Subject: RE: Brass Inserts

Good, we'll make core pins for both ball sizes, thanks for understanding, I'll try to reduce the tooling cost if possible when we machine them.

Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com

----------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your co-operation.

----------------------------------------------------------------------


-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Monday, March 19, 2012 5:29 PM
To: Jeff Carnevali
Subject: RE: Brass Inserts

OK gotcha.

I will get a drawing and also ask them to drop ship you samples of the insert in brass.

Thanks.

Luther Cifers
YakAttack LLC | P.O. Box 147 | Farmville | VA | 23901
t: 434.392.3233 | m: 804.370.3724 | luther@yakattack.us www.yakattack.us

Kayak Fishing Accessories for Kayak Fishermen, By Kayak Fishermen. (tm)


-----Original Message-----
From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Monday, March 19, 2012 8:28 PM
To: Luther Cifers
Subject: RE: Brass Inserts

Dimensions are very critical, if you authorize us to use the stst to make the core pins, we hope that the brass will be exactly the same.  Can you ask the mfg. to provide a drawing complete with tolerances?  At least that way you and I are covered if for some reason the inserts don't fit properly or the plastic fills the inserts because they are inaccurate compared to the core pins.

Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA

9

Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com


----------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any
disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this
e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system.
Thank you for your co-operation.

----------------------------------------------------------------------


-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Monday, March 19, 2012 5:25 PM
To: Jeff Carnevali
Subject: RE: Brass Inserts

OK sample will be stainless steel - production will be RoHS compliant brass.
We will get them in the mail tomorrow.

Thanks.

-----Original Message-----
From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Monday, March 19, 2012 8:19 PM
To: Luther Cifers
Subject: RE: Brass Inserts

THAT'S THE TICKET, SEND SAMPLE AND WE'LL MAKE THOSE WORK, I HAVE ALL THE CORE
PINS IN MY OFFICE WAITING TO GRIND THEM.

Best Regards,
Jeff Carnevali
Pres./CEO


Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com

web: www.ram-mount.com

------------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your co-operation.

------------------------------------------------------------------------

-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Monday, March 19, 2012 5:11 PM
To: Jeff Carnevali
Subject: RE: Brass Inserts

The grooves aren't modeled but they are there. Pic attached.

The insert we use now is the same length (.300"). We've never had an issue.
I'm very comfortable with the thread engagement. Is that your concern or is it the ability to hold in the plastic?

I'm OK to move forward with the ones I sent you for the 1.5" ball if you're more comfortable with that - then we can look at the 1" ball separately.

Thanks.

Luther Cifers
YakAttack LLC | P.O. Box 147 | Farmville | VA | 23901
t: 434.392.3233 | m: 804.370.3724 | luther@yakattack.us www.yakattack.us

Kayak Fishing Accessories for Kayak Fishermen, By Kayak Fishermen. T


-----Original Message-----
From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Monday, March 19, 2012 7:55 PM
To: Luther Cifers
Subject: RE: Brass Inserts

I WOULDN'T USE THE ONE WITH THE RIDGES UNLESS IT ALSO HAS GROOVES OR IT WILL SPIN, DO YOU HAVE PICTURES?  I'M CONCERNED THAT THE INSERTS ARE GETTING SO SHORT THAT THEY WON'T HAVE THE STRENGTH TO HOLD UNDER HIGH STRESS LOADS.

Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com


----------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your co-operation.

----------------------------------------------------------------------


-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Monday, March 19, 2012 4:51 PM
To: Jeff Carnevali
Subject: FW: Brass Inserts

Just checking in to see if you got this Jeff.

Thanks.

Luther Cifers
YakAttack LLC | P.O. Box 147 | Farmville | VA | 23901
t: 434.392.3233 | m: 804.370.3724 | luther@yakattack.us www.yakattack.us

Kayak Fishing Accessories for Kayak Fishermen, By Kayak Fishermen. T


-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Friday, March 16, 2012 11:29 AM
To: 'Jeff Carnevali'
Subject: RE: Brass Inserts

Jeff,

I spoke to my vendor this morning and he recommended we look at the attached inserts. I think these would be good for both applications what do you think? I particularly like the Sharp-sert, which is the one with the ridges.

12

Thanks.

Luther Cifers
YakAttack LLC | P.O. Box 147 | Farmville | VA | 23901
t: 434.392.3233 | m: 804.370.3724 | luther@yakattack.us www.yakattack.us

Kayak Fishing Accessories for Kayak Fishermen, By Kayak Fishermen. T


-----Original Message-----
From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Friday, March 16, 2012 11:23 AM
To: Luther Cifers
Subject: RE: Brass Inserts

10-4, we'll get the tooling modified for the brass inserts you provided for the C ball.  When will you be sending
the production inserts and do you know how many you'll be sending.


Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com

----------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any
disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this
e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system.
Thank you for your co-operation.

----------------------------------------------------------------------


-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Friday, March 16, 2012 7:34 AM
To: Jeff Carnevali
Subject: RE: Brass Inserts

Hi Jeff,

I looked at your model and PDF and agree this is not going to work with the B size ball. I never modeled it - but I obviously should have.

Is there a disadvantage to using a different insert for the B size ball, or do you want to change both inserts to the design you sent? My preference would be to move forward with the C size ball using the insert I already sourced, and address the B size at a later date once the insert details are worked out. I know that will mean more $$ in tooling since they are not combined but I'm willing to do that to get the C size one moving. That's by far the higher priority anyway.

Thanks!

Luther Cifers
YakAttack LLC | P.O. Box 147 | Farmville | VA | 23901
t: 434.392.3233 | m: 804.370.3724 | luther@yakattack.us www.yakattack.us

Kayak Fishing Accessories for Kayak Fishermen, By Kayak Fishermen. T


-----Original Message-----
From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Thursday, March 15, 2012 6:00 PM
To: Luther Cifers
Cc: Chad Remmers; Aaron Hersey
Subject: RE: Brass Inserts

Luther,

It appears that the brass insert is too long to mold into the B size ball mold.  We will only be able to insert mold the brass insert into the C size ball base.

If you have a custom brass insert manufactured like the attached part file it will work for both sizes of bases. The red surfaces will require a rough knurl surface finish and the bevels are imperative to provide the strength to the plastic post.  I also suggest you call out a RoHS compliant brass material.

Even with this custom insert you can see that the wall thickness of the post has been reduced, I question the strength of the post and advise you to abandon this particular design unless you want to make the posts for the 1"
ball out of metal (aluminum, brass or stst)

How would you like to proceed?

Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.

8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com

---------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any
disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this
e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system.
Thank you for your co-operation.

---------------------------------------------------------------------


-----Original Message-----
From: Luther Cifers [mailto:luther@yakattack.us]
Sent: Thursday, March 15, 2012 2:06 PM
To: Jeff Carnevali
Subject: RE: Brass Inserts

Thanks Jeff,

The insert comes from Yardley in New Jersey. I could have used an insert from PEM that was less expensive
and made in China. I chose Yardley because it was made in the USA. Paying more to use domestic parts is a
pretty common occurance for us, but we leverage that by marketing that commitment to our customer base, and
in the long run it works out.

I'm really looking forward to having this molded in. We'll see where the volumes go, but between this one with
the insert molded in and the regular pin lock ball we've been using (which we will still need for some
applications) I expect around 3K - 5K of each size this year. The real beauty is that is going to translate into a
LOT more RAM accessories connected to kayaks this year. Every Screwball we sell will end up with more
RAM parts attached to it.

My expectation is that we will help you guys achieve significant growth in the kayak fishing market over the
next couple of years. I just placed my first distributor order with Aaron this morning. I've been pretty effective
at convincing retailers that RAM is "where it's headed" due to the seamless integration with our rigging
platform - because too many still have the perception that "most people use Scotty". In just a few months since
I've been telling them this they are already seeing the trend and more and more are getting on board. I will
agressively cultivate this throughout 2012.

I'll get the PO over in a few minutes.

Thanks!

Luther Cifers

YakAttack LLC | P.O. Box 147 | Farmville | VA | 23901
t: 434.392.3233 | m: 804.370.3724 | luther@yakattack.us www.yakattack.us

Kayak Fishing Accessories for Kayak Fishermen, By Kayak Fishermen. T


-----Original Message-----
From: Jeff Carnevali [mailto:jeffc@rammount.com]
Sent: Thursday, March 15, 2012 3:01 PM
To: Luther Cifers
Cc: Chad Remmers; Aaron Hersey; Cliff Lucas
Subject: Brass Inserts

Luther,

The 1/4"-20 through hole brass inserts arrived today and I have already ordered enough core pins to alter both the C & B sized molds since it will be easier and more cost effective to do them both at the same time.  If you find there is good volume in this item we will investigate having large qty's, of the brass insert made overseas.  I see that the outside knurl on the brass insert is fairly aggressive and it looks like it will hold very well in the 20% glass filled PC plastic.

Get with Chad and issue your PO for the tooling change and production parts and we'll get it in the scheduling process.

Best Regards,
Jeff Carnevali
Pres./CEO

Our company information is as follows:
National Products Inc.
8410 Dallas Ave. S.
Seattle, WA 98108 USA
Phone: 206-763-8361 Ext 105
Fax: 206-763-9615
Cellular Phone: (206) 356-2365
e-mail: mailto:staff@ram-mount.com
web: www.ram-mount.com

-----------------------------------------------------------------------

CONFIDENTIALITY NOTE:

This e-mail and any attachments are confidential.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your co-operation.

-----------------------------------------------------------------------

# Exhibit E

**From:** Ram Mount [mailto:noreply@rammount.com]
**Sent:** Thursday, March 02, 2017 1:49 PM
**To:** LUTHER@YAKATTACK.US
**Subject:** Order Confirmation 21704764



**NATIONAL PRODUCTS, INC.**
8410 DALLAS AVE SOUTH
SEATTLE, WA 98108
Phone: 206.763.8361
Phone: 206.763.9615
Support: https://rammount.com/support

**ORDER ACKNOWLEDGEMENT**
Order Date: 03/01/2017
Account No: YAKATT
Order ID: 21704764

**Bill To:**
YAKATTACK LLC
PO BOX 444
BURKEVILLE, VA 23922
US

**Ship To:**
YAKATTACK LLC
609 2ND STREET NW
BURKEVILLE, VA 23922
US

Purchase Order:      1702271
Estimate To Ship On: 03/15/2017 (+/-3 Days)"

| Ship Via | F.O.B. | Order Terms | Sales Rep | Territory |
|---|---|---|---|---|
| UPS COLLECT | | Net 30 | JOHN W JACKSON | SE |

| LINE NO. | ORD QTY | UM | CUSTOMER ID | PART PART ID | DESCRIPTION | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|---|
| 1 | 16 | EA | 13025 | RAP-354U-YAK2 | UNPKD 500 QTY 1.5" RAM PIN BASE W/ BALL | $1,768.70 | $28,299.20 |
| 2 | 4 | EA | 13026 | RAP-B-354U-YAK2 | 500 QTY 1" RAM PIN LOCK W INSERT BALL | $906.96 | $3,627.84 |
| 3 | 50 | EA | 13075 | RAP-390-RB-NBU-YAK1-40 | 40 BULK ZOOKA TUBE REVOLUTION NO BASE | $319.89 | $15,994.50 |

| 4 | 2 EA 13002 | RAP-B-354U-YAK1 | UNPKD 1" RAM PIN LOCK BALL 500 QTY. | $872.09 | $1,744.18 |
| 5 | 4 EA 13004 | RAP-B-201U-A-200 | 200 BULK PKGD DBL SOCKET ARM FOR 1" BALL | $481.48 | $1,925.92 |
| 6 | 13 EA 13067 | RAP-340NB-50UU | RAM ROD 2007 HOLDER NO BASE 50 QTY. | $291.04 | $3,783.52 |
| 7 | 10 EA 13073 | RAP-390-AAPU-YAK1-40 | 40 BULK PKGD ZOOKA TUBE W ADAPT-A-POST | $356.18 | $3,561.80 |
| 8 | 7 EA 13005 | RAP-201U-B-50 | 50 QTY RAM DBL SOCKET ARM C BALL B PLAST | $211.77 | $1,482.39 |
| 9 | 240 EA 13036 | RAP-B-202U-GOP1 | UNPKD. RAM GOPRO MOUNTING BASE 1" DIA BA | $4.13 | $991.20 |
| 10 | 5 EA 13012 | RAP-341NB-40U | 40 RAM ROD 2007 JR. HOLDER KAYAK NO BASE | $234.27 | $1,171.35 |
| 11 | 130 EA 13041 | RAM-202U-LO11 | UNPKD RAM BASE LOWRANCE MARK AND ELITE | $5.07 | $659.10 |
| 12 | 3 EA 13086 | RAM-B-316-18-TRA1-NB-40 | 40 Q POD 18" LONG TRANSDUCER MNT NO BASE | $481.07 | $1,443.21 |
| 13 | 100 EA 13020 | RAM-HOL-UN7BU | UNPKD X-GRIP UNIVERSAL HOLDER W/ 1" BALL | $10.35 | $1,035.00 |
| 14 | 100 EA 13040 | RAM-B-202U-LO11 | RAM 1" BASE FOR LOWRANCE MARK AND ELITE | $4.71 | $471.00 |
| 15 | 100 EA 13133 | RAP-B-132B-201U | UNPKD RAM DRINK CUP HOLDER W/ ARM | $11.64 | $1,164.00 |

**SUB TOTAL:** $67,354.21
**FREIGHT CHARGES:** $0.00
**SALES TAX:** $0.00
**(ALL CURRENCY IS IN US DOLLARS) TOTAL:** $67,354.21

To view details of your order go to http://www.rammount.com/, login and select Resources -> My Orders from the navigation menu.

**From:** Ram Mount [mailto:noreply@rammount.com]
**Sent:** Thursday, March 23, 2017 1:17 PM
**To:** LUTHER@YAKATTACK.US
**Subject:** Order Confirmation 21706761



**NATIONAL PRODUCTS, INC.**
8410 DALLAS AVE SOUTH
SEATTLE, WA 98108
Phone: 206.763.8361
Phone: 206.763.9615
Support: https://rammount.com/support

**ORDER ACKNOWLEDGEMENT**
Order Date: 03/22/2017
Account No: YAKATT
Order ID: 21706761

**Bill To:**
YAKATTACK LLC
PO BOX 444
BURKEVILLE, VA 23922
US

**Ship To:**
NUCANOE
2125 HUMBOLT ST
BELLINGHAM, WA 98225
US

Purchase Order:      17032201
Estimate To Ship On: 04/05/2017 (+/-3 Days)"

1

| | Ship Via | F.O.B. | Order Terms | Sales Rep | Territory |
|---|---|---|---|---|---|
| | UPS COLLECT | | Net 30 | JOHN W JACKSON | SE |

| LINE NO. | ORDUM QTY | CUSTOMER PART ID | PART ID | DESCRIPTION | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 1 | 5 EA | ZT-003 | RAP-390-RB-NBU-YAK1-40 | 40 BULK ZOOKA TUBE REVOLUTION NO BASE | $319.89 | $1,599.45 |

|  |  |
|---|---|
| **SUB TOTAL:** | $1,599.45 |
| **FREIGHT CHARGES:** | $0.00 |
| **SALES TAX:** | $0.00 |
| **(ALL CURRENCY IS IN US DOLLARS) TOTAL:** | $1,599.45 |

To view details of your order go to http://www.rammount.com/, login and select Resources -> My Orders from the navigation menu.